CC-2001-570                                             1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Félix Ramírez Ferrer<br><br>    Recurrido<br><br>        v.<br><br>Policía de Puerto Rico<br><br>    Peticionario | Certiorari<br><br>2002 TSPR 154<br><br>158 DPR \_\_\_\_ |

Número del Caso: CC-2001-570


Fecha: 26 de diciembre de 2002


Tribunal de Circuito de Apelaciones:
                        Circuito Regional I


Panel integrado por su Presidenta, la Jueza Fiol Matta, la Jueza
Rodríguez de Oronoz y el Juez González Román


Oficina del Procurador General:
                        Lcda. María Astrid Hernández Martín
                        Procuradora General Auxiliar


Abogado de la Parte Recurrida:
                        Lcdo. Manuel Angel Betancourt Avilés


Materia: Revisión Administrativa




Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correcciones del proceso
de compilación y publicación oficial de las decisiones del
Tribunal. Su distribución electrónica se hace como un servicio
público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Félix Ramírez Ferrer

    Recurrido

       v.

                                    Certiorari

Policía de Puerto Rico             CC-2001-570

    Peticionario

PER CURIAM

San Juan, Puerto Rico, a 26 de diciembre de 2002.

**El peticionario solicita de esta Curia la revisión de una sentencia emitida por el Tribunal de Circuito de Apelaciones revocando una resolución emitida por la Comisión de Investigación, Procesamiento y Apelación, también conocida como C.I.P.A. Mediante dicha resolución se confirmó la determinación del Superintendente de la Policía de Puerto Rico de expulsar permanentemente a un miembro de dicho cuerpo, por alegada conducta contraria al Reglamento de Personal de la Policía.**

**Nos corresponde determinar si un agente de la Policía tiene derecho a que se le entreguen los**

documentos relacionados con la toma, manejo y

análisis de una prueba de dopaje, a base de la cual

fue expulsado del Departamento de la Policía, de manera que pueda atacar la confiabilidad de dicho procedimiento cuando acude ante la C.I.P.A. para impugnar la decisión del Superintendente de la Policía de expulsarlo.

I

El señor Félix Ramírez Ferrer se desempeñaba como agente de la Policía de Puerto Rico, en adelante Policía, adscrito a la División de Extradiciones.[1] El 12 de marzo de 1997, el Superintendente de la Policía de Puerto Rico, en adelante Superintendente, emitió una resolución formulándole cargos al señor Ramírez Ferrer por alegada conducta en violación al Artículo 14, sección 14.5, incisos 15 y 27 del Reglamento de Personal de la Policía de Puerto Rico,[2] que disponen lo siguiente:

> FALTA GRAVE 15 "Usar drogas, tranquilizantes o estimulantes, a menos que los mismos sean por prescripción facultativa."

> FALTA GRAVE 27 "Observar una conducta lesiva, inmoral o desordenada en detrimento del Cuerpo de la Policía."

Los cargos estaban relacionados con una muestra de orina que el señor Ramírez Ferrer le entregara a uno de los monitores del Instituto de Ciencias Forenses, en adelante Instituto, el 20 de diciembre de 1996, durante una recolección de muestras de orina realizada a los miembros de la División de Extradiciones de la Policía de Puerto Rico, con el fin de

---

[1] Apéndice del recurso de certiorari, pág. 65.

[2] Íd., págs. 65-66.

detectar la presencia de sustancias controladas.[3] La muestra entregada por el señor Ramírez Ferrer fue analizada por un técnico de laboratorio del Instituto de Ciencias Forenses y el análisis arrojó un resultado positivo a cocaína y metabolito de cocaína.[4]

En la referida resolución, el Superintendente le notificó al señor Ramírez Ferrer su intención de expulsarlo de la Uniformada como sanción. No obstante, le apercibió de su derecho a una vista administrativa de naturaleza informal, en la cual le explicarían los cargos y le brindarían la oportunidad de ofrecer su versión.

La referida vista administrativa se celebró los días 19 de junio y 2 de julio de 1997.[5] El 6 de octubre de 1997, el Superintendente le confirmó al señor Ramírez Ferrer su expulsión del puesto que ocupaba en la Policía y le apercibió de su derecho a apelar dicha determinación ante la C.I.P.A.[6]

El 14 de octubre de 1997, el señor Ramírez Ferrer presentó un recurso ante la C.I.P.A. Arguyó que el proceso de recolección de la muestra no cumplió con el debido proceso de ley ni las directrices del Reglamento de la Policía para levantar muestras de dopaje. Adujo que se cometieron errores en el análisis y pruebas químicas; que no se estableció la cadena de evidencia en cuanto al manejo y análisis de la

---

[3] Íd.

[4] Íd.

[5] Íd., págs. 59-64.

[6] Íd.

muestra y que la misma no fue analizada por el perito que fue presentado como testigo.[7]

Luego de varios incidentes procesales, el 27 de enero de 1998, el señor Ramírez Ferrer le solicitó a la C.I.P.A. que le ordenara al Instituto entregarle varios documentos relacionados con la toma, manejo y análisis de las pruebas de dopaje realizadas por dicha institución.[8] El 8 de mayo de 1998, insistiendo en este mismo asunto, el señor Ramírez Ferrer le solicitó mediante moción a la C.I.P.A. que se expresara en cuanto al escrito que requería del Instituto la entrega de toda la documentación relacionada con la cadena de evidencia y el análisis químico.[9] Dicha moción fue denegada con un escueto no ha lugar por la C.I.P.A., mediante resolución de 28 de mayo de 1998.[10] No obstante, el 20 de enero de 1999, el señor Ramírez Ferrer reiteró su solicitud, mediante "Moción Urgente y Solicitud de Eliminación de Prueba por Falta de Disponibilidad", expresando que aún la Policía no le había entregado los documentos del Instituto que él les había solicitado.[11] En dicha moción requirió, además, que se le impidiera utilizar a la Policía todo documento o testimonio perteneciente o en manos del Instituto, así como todo testimonio relacionado con el mismo.

---

[7] Íd., pág. 69.
[8] Íd., págs. 77-78.

[9] Íd., págs. 80-81.

[10] Íd., pág. 82.

[11] Íd., págs. 83-84.

La vista ante la C.I.P.A. se celebró los días 25 y 26 de enero, 3, 4 y 5 de mayo, 10 de junio, 7 y 14 de octubre de 1999.[12] Durante esa vista, además de su propio testimonio, el señor Ramírez Ferrer presentó el testimonio de dos peritos: el doctor José A. Tavárez Valle, doctor en medicina y médico revisor de sustancias controladas, y el señor Graham Castillo, licenciado en química. También presentó el testimonio de los siguientes compañeros de trabajo: Teniente Irving Lugo García, Capitán Sergio Irizarry Silva, Agente Mario Reyes Mulero, Sargento Edwin Teruel Almodóvar, Sargento Héctor Orta Calderón, Agente Celestino Vázquez Vázquez, Agente Carlos Santos Meléndez y Agente Eulalio Ortiz Ostolaza. Como prueba documental, el señor Ramírez Ferrer presentó una prueba de dopaje que se le practicara en el año 1992 y una carta fechada 24 de febrero de 1995, en la cual se le nombraba Agente del Año 1994. Como prueba documental ofrecida, pero no admitida, presentó copia del récord médico suyo que obraba en la oficina del doctor Tavárez Valle y un informe pericial del licenciado Graham Castillo sobre una prueba de dopaje que se le hiciera el 3 de abril de 1997, utilizando una muestra de su cabello.

Por su parte, el Departamento de la Policía presentó a los siguientes testigos: señor Flor Matos De Jesús, señora Rosa A. De Jesús Colón, señora Myrna Parson González, señor Tomás Medina Fernández, señor Rafael Martínez Rosa y señora Zamaris Flores. Como prueba documental presentó los

---

[12] Íd., pág. 3.

resultados de la muestra de orina tomada al señor Ramírez (se

aceptó con la objeción del señor Ramírez Ferrer); el

formulario ICG-2, parte A-96, conteniendo información sobre

la donación de muestra, y la parte D-96 del mismo formulario,

conteniendo información sobre los resultados de laboratorio.

El 18 de octubre de 1999, y luego de recibida toda la

prueba testifical y documental, la C.I.P.A. emitió una

resolución confirmando la decisión del Superintendente.[13]

Determinó, entre otras cosas, lo siguiente:

> Conforme con el procedimiento establecido, el apelante donó una muestra de orina para fines de análisis. El encargado de recolectar las muestras lo fue el Sr. Tomás Medina Fernández, su función fue la de tomar la temperatura a la muestra, sellarla, verificar las iniciales e incluirla en un lote de 137 muestras. El número de control asignado al envase del apelante fue el 13747 que se consigna tanto en la denominada hoja de control como en el envase. (Ex 1 P. Apelada) El Sr. Luis Rodríguez Félix fue el encargado de entregar los envases. El apelante fue advertido de su derecho a obtener parte de la muestra pero no la solicitó.

> El lote de las muestras fue custodiado ese mismo día por el Sr. Tomás Medina al laboratorio de Toxicología del Instituto de Ciencias Forenses[,] donde el químico Rafael Martínez Rosas realizó el primer análisis denominado inmuno-ensayo, cuyo propósito es el rastreo (scan) de alguna de las familias de drogas narcóticas, Cannabinoides, Opiáceos o Cocaína. La muestra analizada y que correspondió al apelante arrojó positivo a Cocaína. El químico Martínez Rosa recibió el lote de muestras de orina número 123137-3 que contenía la muestra 13747 donada por el apelante.

> La muestra del apelante fue sometida también a un análisis de corroboración, y el mismo fue efectuado por la química, Rosa De Jesús Colón[,] que determinó que la muestra del apelante arrojó positivo a metabolito de Cocaína (Benzoyl Ecgonina) en 10.20 mg y a la sustancia como tal en 0.60. El método utilizado fue el de cromatografía de gases acoplado

---

[13] Íd., págs. 59-64.

al espectro de masas (GMCS)[.] Este último análisis se realizó el 8 de enero de 1997. (Ex 111 – Apelada)

El apelante hizo constar en la hoja de control que al momento de donar la muestra estaba ingiriendo los siguientes medicamentos[:] Zoma, Flexeril, Zovirax 800 mg, Relafen 500 mg y Xanax 0.5 mg, ésta última para el tratamiento de la Ansiedad y el Zovirax para una enfermedad cutánea (herpes simplex).[14]

Concluyó la agencia administrativa, aquí recurrida, que el señor Ramírez Ferrer no aportó prueba que desvirtuara la confiabilidad del procedimiento científico utilizado por los funcionarios del Instituto. Finalmente, sostuvo que conforme a la prueba desfilada, las faltas graves imputadas fueron cometidas y que la evidencia presentada por el Departamento de la Policía fue suficiente para acreditar la observancia escrupulosa de la cadena de custodia de la muestra y el consecuente resultado. No obstante, cabe destacar que durante las referidas vistas el señor Ramírez Ferrer presentó el testimonio del licenciado Graham Castillo, quien declaró, entre otras cosas, que las cantidades reportadas en el análisis de la muestra de orina no correspondían a una dosis normal de droga.[15] Testificó, además, que para arrojar tales resultados la persona tendría que haber tomado una sobredosis de dicha droga. Asimismo, señaló que si el señor Ramírez Ferrer había ingerido el medicamento Soma –que contiene codeína– el análisis debió haber reflejado un resultado

---

[14] Íd., págs. 60-61.

[15] Íd., págs. 188-193.

positivo para opiáceo.  Sin embargo, expresó que el resultado
fue negativo en cuanto a dicha sustancia.

El 28 de febrero de 2000, el señor Ramírez Ferrer
presentó una solicitud de reconsideración ante la C.I.P.A.,[16]
la cual fue declarada no ha lugar mediante resolución
notificada el 15 de marzo de 2000.[17]  Inconforme con dicha
determinación, el 14 de abril de 2000 presentó un recurso de
revisión ante el Tribunal de Circuito de Apelaciones
alegando, en esencia, que erró la C.I.P.A. al validar el
procedimiento de recolección de muestra de orina, a pesar de
que el día que fue recogida no se encontraba en su unidad de
trabajo, sino que fueron a buscarlo a su casa para requerirle
la muestra.[18]  Adujo, además, que erró la referida agencia
administrativa al no concederle copia de la documentación
necesaria para controvertir la prueba sobre la cadena de
evidencia.  Finalmente, expresó que erró la C.I.P.A. al
validar como correcto el resultado positivo arrojado en la
prueba de detección de sustancias controladas.

Ante los errores señalados, el referido foro intermedio
apelativo emitió sentencia revocando la resolución de la
C.I.P.A.  Concluyó, que el Departamento de la Policía no
presentó la evidencia necesaria para establecer la cadena de
evidencia y, por ende, la confiabilidad del procedimiento.
Sostuvo, además, que la C.I.P.A. abusó de su discreción al
no permitirle al aquí recurrido el descubrimiento de prueba

---

[16] Íd., págs. 50-55.

[17] Íd., pág. 48.

solicitado. Determinó que por no contar con copia de dichos documentos, al allí peticionario se le hizo imposible durante los procedimientos ante la C.I.P.A. confrontar a los empleados del Instituto, los cuales figuraban como testigos del Departamento de la Policía, y de este modo impugnar la confiabilidad del procedimiento dirigido a levantar las muestras de dopaje.

Inconforme con tal dictamen, el Procurador General recurre ante nos mediante petición de <u>Certiorari</u>, señalando como errores cometidos por el Tribunal de Circuito de Apelaciones los siguientes:

ERRÓ EL TRIBUNAL DE CIRCUITO DE APELACIONES AL DETERMINAR QUE NO SE ESTABLECIÓ LA CADENA DE EVIDENCIA Y POR LO TANTO EL PROCEDIMIENTO NO RESULTA CONFIABLE.

ERRÓ EL TRIBUNAL DE CIRCUITO DE APELACIONES AL DETERMINAR QUE NO SE CUMPLIÓ CON EL DEBIDO PROCESO DE LEY.

## II

El Departamento de la Policía no está satisfecho con la determinación del Tribunal de Circuito de Apelaciones, que concluyó que la C.I.P.A. abusó de su discreción al negarle al señor Ramírez Ferrer el descubrimiento de prueba solicitado y, en consecuencia, le violó a este último su derecho a un debido proceso de ley. El recurrido acudió ante dicho foro intermedio apelativo, por entender que el proceso en el cual se le detectó la presencia de sustancias controladas en su cuerpo no era confiable y por la negativa

---

[18] Íd., págs. 26-45.

**de la C.I.P.A. a permitirle el descubrimiento de prueba necesario para impugnar dicho procedimiento.  Veamos.**

**Mediante la Orden General Núm. 90-1 emitida por el Superintendente de la Policía de Puerto Rico se estableció el procedimiento para detectar la presencia de sustancias controladas en los empleados de esa dependencia gubernamental.  Dicho procedimiento provee para que todo empleado, sin importar su rango o posición, pueda ser seleccionado para urinálisis.  Provee, además, para que todos los empleados puedan ser seleccionados por lo menos una vez al año para urinálisis y en ningún caso en más de dos ocasiones durante un año natural, salvo que se haya obtenido un resultado positivo debidamente corroborado, o que el empleado esté en un proceso de consejería, tratamiento o rehabilitación.**

En dicha Orden General se prescribió que las faltas, medidas disciplinarias y procedimientos contenidos en la ley y en el Reglamento de Personal del Departamento de la Policía serían aplicables a los empleados de esa agencia que arrojaran un resultado positivo en las pruebas de detección de sustancias controladas.[19]

El Reglamento de Personal del Departamento de la Policía de Puerto Rico establece que el Superintendente tiene la facultad de imponer sanciones disciplinarias contra un miembro de dicho cuerpo cuya conducta esté en contravención a sus

---

[19] Inciso I (1) de la Orden General Núm. 90-1 de la Policía de Puerto Rico de 1 de abril de 1990.

normas.[20]  Se considerará a estos efectos como una falta grave el uso de drogas, tranquilizantes o estimulantes, a menos que los mismos sean por prescripción facultativa.[21]  Cuando a través del resultado positivo de una prueba de detección de sustancias controladas el Superintendente adviene en conocimiento de que un empleado hace uso de éstas, la sanción a imponerse será la expulsión o destitución del empleado, según corresponda.

El referido Reglamento dispone que en los casos en que la decisión del Superintendente implique la destitución o expulsión de un miembro de la fuerza, este último será advertido de su derecho a impugnar dicha decisión ante la Comisión de Investigación, Procesamiento y Apelación (en adelante la C.I.P.A.).[22]

La C.I.P.A. actuará como cuerpo apelativo con **jurisdicción exclusiva** para **oír y resolver** apelaciones interpuestas por los miembros de la uniformada cuando el Superintendente les haya impuesto cualquier medida disciplinaria con relación a una falta grave.[23]  La vista celebrada ante la C.I.P.A. es una especie de *juicio de novo*, donde el organismo administrativo tiene la oportunidad de escuchar toda la evidencia y otorgarle el valor probatorio que a su juicio merezca la misma.[24]

---

[20] Art. 14.3 del Reglamento de Personal de la Policía de Puerto Rico, Reglamento Núm. 4216 del 11 de mayo de 1990.

[21] Art. 14.5 (A)(15) del Reglamento de Personal de la Policía de Puerto Rico, supra.

[22] Art. 14.3(b)(1)(a) del Reglamento de Personal de la Policía de Puerto Rico, supra.

[23] 1 L.P.R.A. sec. 172 (2).

[24] Arocho v. Policía de P.R., 144 D.P.R. 765, 772 (1998).

El Reglamento Núm. 5543 de la C.I.P.A. establece las normas a seguir en los procedimientos adjudicativos que se celebran ante sí.[25] Dispone que las vistas se llevarán a cabo ante esa agencia, constituida por tres o más miembros, o por un comisionado o **abogado examinador.**[26] Este último **tendrá facultad para disponer de todos los asuntos procesales y relativos a la evidencia a presentarse en el caso, incluyendo los incidentes relativos al descubrimiento de prueba** y podrá emitir las resoluciones interlocutorias que fueren necesarias.[27] Entre las facultades de la C.I.P.A. se encuentran ordenar la comparecencia y declaración de testigos, así como la presentación de papeles, registros, documentos u otra evidencia relacionada con cualquier asunto ante su consideración.[28]

La C.I.P.A., luego de celebrar la vista correspondiente, puede confirmar, revocar o modificar la determinación o actuación de la cual se hubiere apelado, o podrá imponer cualquier sanción que la autoridad facultada para sancionar hubiese podido imponer.[29] Las decisiones de la C.I.P.A. son finales y obligatorias para las partes, sujetas únicamente a

---

[25] Reglamento Núm. 5543 de la Comisión de Investigación, Procesamiento y Apelación sobre Normas de los Procedimientos de la Comisión del 29 de enero de 1997.

[26] Art. 24 del Reglamento de Normas de los Procedimientos de la Comisión, <u>supra</u>.

[27] Art. 30 del Reglamento de Normas de los Procedimientos de la Comisión, <u>supra</u>.

[28] Art. 23 (1) del Reglamento de Normas de los Procedimientos de la Comisión, <u>supra</u>.

[29] 1 L.P.R.A. sec. 172.

revisión por parte de los tribunales.[30] Nótese, pues, que la vista que se celebra ante la C.I.P.A. es propiamente una vista formal, porque en ella se ventilan de manera definitiva, a nivel administrativo, todos los derechos del empleado, y las

---

[30] 1 L.P.R.A. sec. 173; Art. 33 del Reglamento de Normas de los Procedimientos ante la Comisión, _supra_, el cual dispone lo siguiente:

> La parte adversamente afectada por una resolución, u orden parcial o final de la CIPA, podrá dentro del término de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden, presentar una moción de reconsideración de la resolución u orden a tenor con lo dispuesto en la Sección 3.15 de la Ley 170 del 12 de agosto de 1988, según enmendada. La CIPA, dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión comenzará a decursar nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso.

> Si se tomare alguna determinación en su consideración, el término para solicitar revisión empezará a decursar desde la fecha en que se archive en autos una copia de la notificación de la resolución de la CIPA resolviendo definitivamente la moción, cuya resolución deberá ser emitida y archivada en autos dentro de los noventa (90) días siguientes a la radicación de la moción.

> Si la CIPA dejare de tomar alguna acción con relación a la moción de reconsideración dentro de los noventa (90) días de haber sido radicada una moción acogida para resolución, perderá jurisdicción sobre la misma y el término para solicitar la revisión empezará a decursar a partir de la expiración de dicho término de noventa (90) días salvo que el Tribunal, por justa causa, autorice a la CIPA una prórroga para resolver, por un tiempo razonable.

> La parte que solicite la revisión ante el Tribunal de Circuito de Apelaciones notificará su escrito a la CIPA y a las demás partes dentro del término de treinta (30) días que le concede la ley para solicitar dicha revisión.

determinaciones de hecho de esa agencia están sujetas, únicamente, al limitado ámbito de la revisión judicial. En este sentido es equivalente a un juicio en sus méritos.

La Sección 3.1 de la Ley de Procedimiento Administrativo Uniforme[31] dispone el mecanismo a seguirse por las agencias en los procedimientos de adjudicación. Cuando una agencia deba adjudicar formalmente una controversia deberá salvaguardar los derechos siguientes:

> 1. Derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte.

> **2. Derecho a presentar evidencia.**

> 3. Derecho a una adjudicación imparcial.

> **4. Derecho a que la decisión sea basada en el expediente.** (Énfasis nuestro.)

En cuanto a la aplicabilidad de los mecanismos de descubrimiento de prueba en los procedimientos administrativos adjudicativos, la sección 3.8 de la Ley de Procedimiento Administrativo Uniforme[32] dispone lo siguiente:

> **(a) Los procedimientos de descubrimiento de prueba no serán de aplicación a los casos de adjudicación administrativa, a menos que se autoricen en los reglamentos de procedimiento de adjudicación de la agencia *y* así lo autorice el funcionario que presida el procedimiento adjudicativo.** No obstante lo anteriormente dispuesto, en los reglamentos de las agencias se garantizará a todo querellado el derecho a los mecanismos de descubrimiento de prueba para los casos en que el procedimiento de adjudicación sea promovido a iniciativa de la agencia. (Énfasis nuestro.)

> **(b) Podrá, además, emitir citaciones para la comparecencia de testigos; órdenes para la**

---

[31] 3 L.P.R.A. sec. 2151.

[32] 3 L.P.R.A. sec. 2158.

**producción de documentos, materiales u otros objetos; y órdenes protectoras, conforme a las Reglas de Procedimiento Civil.**

**(c) En caso de incumplimiento de una orden o requerimiento emitido al amparo del inciso (b) de esta sección, la agencia podrá presentar una solicitud en auxilio de jurisdicción en la sala con competencia del Tribunal de Primera Instancia, y éste podrá emitir una orden judicial en la que ordene el cumplimiento de la persona en cuestión bajo apercibimiento de que incurrirá en desacato si no cumple con dicha orden.**

**No obstante la disposición anterior, hemos reiterado que "nada impide que en casos apropiados se adopten normas de las Reglas de Procedimiento Civil para guiar el curso del proceso administrativo cuando las mismas propicien una solución justa, rápida y económica de dichos procedimientos".[33]**

**El Reglamento de la C.I.P.A. dispone, sobre el tema de descubrimiento de prueba, que** "en las apelaciones radicadas, el abogado examinador podrá autorizar el uso de algún mecanismo de descubrimiento de prueba en el ejercicio de su discreción".[34] **El Artículo 5 de la Ley Orgánica de la Comisión dispone que esa agencia podrá ordenar no sólo la comparecencia y declaración de testigos,** sino la presentación de cualesquiera libros, papeles, registros, documentos u otra evidencia relacionados con cualquier asunto ante su consideración.[35]

---

[33] Pérez Rodríguez v. P.R. Park. Systems, Inc., 119 D.P.R. 634, 640 (1987); Berríos v. Comisión de Minería, 102 D.P.R. 228 (1974); Martínez v. Tribunal Superior, 83 D.P.R. 717 (1961).

[34] Artículo 21 del Reglamento de Normas de los Procedimientos de la Comisión, supra.

[35] 1 L.P.R.A. sec. 175.

**III**

En el caso ante nos, la decisión del Superintendente de expulsar al señor Félix Ramírez Ferrer de la agencia se fundamentó en el resultado positivo de una prueba de detección de sustancias controladas que le fuera practicada a éste. El agente Félix Ramírez Ferrer acudió en revisión de dicha determinación ante la C.I.P.A., donde solicitó se le suministraran los documentos relacionados con la prueba de dopaje que le fue practicada. Como señaláramos anteriormente, el Reglamento de Normas de los Procedimientos de la Comisión, supra, reconoce y autoriza el uso de mecanismos de descubrimiento de prueba, sujeto a la discreción del abogado-examinador. Por lo tanto, nos corresponde determinar si en este caso el agente afectado por la decisión del Superintendente era acreedor de que el abogado-examinador autorizara el descubrimiento de la prueba que se relaciona con la toma, manejo y análisis de la prueba de dopaje, de manera que pueda atacar la confiabilidad de dicho procedimiento.

En ocasiones anteriores nos hemos enfrentado a situaciones similares. Primero, en López Vives v. Policía de P.R.,[36] nos enfrentamos al reclamo de un empleado que cuestionó la decisión de la Junta de Apelaciones del Sistema de Administración de Personal, en adelante J.A.S.A.P., de negarle el acceso a un alegado informe confidencial, el cual motivó su destitución de la uniformada. En esa ocasión expresamos que la función de

---

[36] 118 D.P.R. 219, 259 (1987).

J.A.S.A.P., **al igual que otros organismos administrativos a nivel apelativo**, a los cuales le han sido delegados poderes de adjudicación, consiste en decidir una controversia fáctica entre personas, aplicando a los hechos específicos del caso las normas y el derecho vigente.[37] La comparecencia ante J.A.S.A.P. es la última oportunidad que tiene el peticionario en el procedimiento administrativo para confrontar la prueba y defenderse; en este sentido es equivalente a un juicio en sus méritos, ya que una vez J.A.S.A.P. emite su dictamen el único remedio disponible es un recurso de revisión ante el Tribunal de Circuito de Apelaciones, donde el alcance de la intervención judicial es limitado.[38] Allí expresamos lo siguiente:

> **Desde la creación a principios de siglo de estas agencias administrativas, los tribunales han aceptado que para desempeñar adecuadamente las múltiples funciones asignadas en esta sociedad al Estado era necesario otorgar poderes de adjudicación. La preocupación inicial de los tribunales con la constitucionalidad de la delegación de múltiples poderes a estas entidades fue superada en la década del cuarenta y ahora la revisión judicial mayormente se ha convertido en un instrumento para evitar actuaciones arbitrarias y velar por el cumplimiento estricto con el debido proceso.**

> Por la naturaleza de los poderes delegados, requerimos que los tribunales administrativos a nivel apelativo adopten procedimientos que le permitan al apelante una oportunidad de ser oído para defenderse y presentar su caso en un proceso con las garantías adecuadas.[39] **(Citas omitidas. Énfasis nuestro.)**

---

[37] López Vives v. Policía de P.R., supra; López v. Junta Planificación, 80 D.P.R. 646, 667 (1958).

[38] López Vives v. Policía de P.R., supra.

[39] López Vives v. Policía de P.R., supra; Vélez Ramírez v. Romero Barceló, 112 D.P.R. 716 (1982); Rodríguez v. Tribunal Superior,

Añadimos, que entre estas garantías, una parte afectada tiene derecho a presentar toda la prueba necesaria para sostener su reclamo, así como para refutar oralmente o por escrito la evidencia sometida en su contra. Reiteramos, que el debido proceso de ley "no es un molde rígido que prive de flexibilidad a los organismos administrativos, pero requiere un proceso justo y equitativo que respete la dignidad de los individuos". [40] Finalmente, concluimos que el entonces peticionario debió tener acceso al referido informe "en una etapa significativa del procedimiento", como lo es la vista apelativa celebrada por J.A.S.A.P. En consecuencia, devolvimos el caso a J.A.S.A.P. para que le permitiera al peticionario acceso al documento en cuestión y continuaran con los procedimientos de rigor.[41]

En Ríos Colón v. F.S.E. nos pronunciamos en forma similar. [42] El funcionario encargado de adjudicar la controversia en la agencia administrativa había autorizado el descubrimiento de prueba, por lo que debíamos resolver si el

---

104 D.P.R. 335 (1975); Domínguez Talavera v. Tribunal Superior, 102 D.P.R. 423 (1974); López v. Junta Planificación, supra; Mathews v. Eldridge, 424 U.S. 319 (1976); Goss v. López, 419 U.S. 565 (1975); S. Breyer y R. Stewart, Administrative Law and Regulatory Policy, 2da ed., Boston, Little, Brown & Co., 1985, Cap. 7, págs. 699, et seq.

[40] López Vives v. Policía de P.R., supra; L. Tribe, American Constitutional Law, New York, The Foundation Press, 1978, pág. 503; B. Schwartz, Administrative Law, 3ra ed., Boston, Little, Brown & Co., 1991, Cap. 5, págs. 224-292.

[41] López Vives v. Policía de P.R., supra.

[42] 139 D.P.R. 167 (1995).

Reglamento de la Junta de Apelaciones[43] autorizaba el uso de los mecanismos de descubrimiento. **Este Tribunal reconoció que en un procedimiento formal de adjudicación el promovente de la acción tiene un interés legítimo en el descubrimiento previo de la prueba.**[44] Ello es así, porque el derecho del promovente de presentar evidencia para sostener sus argumentos se ejerce esencialmente ante el cuerpo o tribunal administrativo a nivel apelativo. La posterior revisión de la decisión de tal cuerpo, por parte del Tribunal de Circuito de Apelaciones, estará limitada a determinar si dicha decisión está apoyada por evidencia sustancial. En esa ocasión dispusimos que **"[i]mpedir o limitar innecesariamente el acceso al descubrimiento de prueba en estos casos, pues, puede dar lugar a que se conculque el debido proceso de ley y las disposiciones de la L.P.A.U. que son pertinentes".**[45]

IV

Con relación al caso de autos, el Reglamento que rige los procedimientos ante la C.I.P.A. dispone que el uso de mecanismos de descubrimiento de prueba estará sujeto a la discreción del

---

[43] Organismo creado por el Reglamento de Personal de la Corporación del Fondo del Seguro del Estado para revisar: (1) las decisiones del Administrador en casos de destituciones, cesantías, suspensiones de empleo y sueldo, y cualquier acción de carácter disciplinario; y (2) las decisiones de éste en caso de clasificación o reclasificación de puestos, o de cambio en los deberes, autoridad o responsabilidades de un puesto. Reglamento de 1ro de marzo de 1983.

[44] Ríos Colón v. F.S.E., supra, pág. 178.

[45] Íd.

abogado-examinador.[46]   Sin embargo, dicha discreción no es absoluta, su ejercicio está limitado por el debido proceso de ley.[47]

Refiriéndonos al ejercicio de la discreción en el ámbito administrativo, en Debién v. Junta de Contabilidad[48] expresamos que el ejercicio de la discreción administrativa debe tener una base de razonabilidad.

De ordinario, la discreción administrativa es amplia y debe ser respetada por los tribunales.  No obstante, para que una determinación emitida por una agencia administrativa pueda merecer deferencia por parte nuestra, ésta **debe ejercerse razonablemente y de conformidad con los objetivos del estatuto.**[49]

Adviértase que la C.I.P.A es un cuerpo o tribunal administrativo a nivel apelativo que realiza funciones cuasi-judiciales.[50] Las actuaciones de esta agencia se asemejan a las de un tribunal, debido al poder de adjudicación que le

---

[46] Art. 21 del Reglamento de Normas de los Procedimientos ante la Comisión, supra.

[47] Misión Ind. P.R. v. J.P., 146 D.P.R. 64 (1998); López v. Junta de Planificación, supra.

[48] 76 D.P.R. 96, 104 (1954); Thompson v. Junta de Contabilidad, 96 D.P.R. 879, 895 (1969).

[49] Medina Bernard v. Adm. Corrección, 126 D.P.R. 800, 808 (1990), Opinión concurrente emitida por el Juez Asociado señor Negrón García.

[50] Díaz Marín v. Mun. de San Juan, 117 D.P.R. 334, 338 (1986).

fuera delegado.[51]   Por tal razón, el abogado-examinador que preside la vista debe ajustarse a los principios básicos que rigen la discreción judicial.

Según ha sido definida por este Tribunal, "[l]a discreción, naturalmente, significa, tener poder para decidir de una u otra forma, esto es, para escoger entre uno o varios cursos de acción".[52]  No obstante, en el ámbito judicial dicho concepto no significa poder para actuar de una forma u otra haciendo abstracción del derecho.[53]  Razón por la cual reiteradamente hemos expresado que la **"discreción es, pues, una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera"**.[54] Su ejercicio está inexorable e indefectiblemente atado al concepto de la razonabilidad.[55]

Este Tribunal ha señalado las situaciones en las cuales se considera que el encargado de adjudicar la controversia ha incurrido en abuso de discreción.  Son éstas las siguientes:

> [C]uando el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario el juez, sin

---

[51] D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed., Colombia, Ed. Legis, S.A., 2001, pág. 155.  Citando a FCC v. Pottville Broadcasting Co., 309 U.S. 134, 143 (1940).
[52] Pueblo v. Ortega Santiago, 125 D.P.R. 203, 211 (1990).

[53] Pueblo v. Sánchez González, 90 D.P.R. 197, 200 (1964); Negrón v. Srio de Justicia, res. el 2 de mayo de 2001, 2001 TSPR 63, 154 D.P.R. ___ (2001), 2001 J.T.S. 66.

[54] Bco. Popular de P.R. v. Mun. de Aguadilla, 144 D.P.R. 651, 657(1997); Pueblo v. Dávila Delgado, 143 D.P.R. 157 esc. 15 (1997); Pueblo v. Ortega Santiago, supra; Pueblo v. Sánchez González, supra.

[55] Pueblo v. Ortega Santiago, supra.

justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el **juez livianamente sopesa y calibra los mismos.**[56] (Énfasis nuestro.)

Al ejercer su discreción de permitir o no el uso de mecanismos de descubrimiento de prueba, el abogado-examinador que preside las vistas ante la C.I.P.A. debe aplicar su discernimiento de forma razonable, teniendo como fin último alcanzar una solución justa.[57] La discreción no puede ejercerse de forma arbitraria o irrazonable. Por tal razón deben sopesarse, por un lado, el interés legítimo de una parte en el descubrimiento previo de prueba[58] y, del otro, el interés de la agencia de resolver las controversias ante su consideración en forma expedita y sin las trabas procesales de los tribunales de justicia.[59]

Los documentos en cuestión, que el abogado-examinador de la C.I.P.A. se negó a autorizar el descubrimiento de prueba, eran los siguientes: (1) todos los documentos relacionados con la toma de la muestra; (2) todos los documentos que acreditaban la cadena de custodia, desde que se tomó la muestra de orina hasta que el laboratorio informó el resultado; (3) copias de las páginas de cualquier libro, libreta, bitácora u objeto similar que se usen para llevar récord de la muestra; (4) copia de la metodología oficial para la detección de la cocaína en

---

[56] Íd.

[57] Bco Popular de P.R. v. Mun. de Aguadilla, supra.

[58] Ríos Colón v. F.S.E., supra, pág. 178.

la orina; (5) procedimientos, protocolos y guías oficiales que se usen en la detección de cocaína en la orina; (6) copias de los récords de pruebas de proficiencia y de control de calidad; (7) informe sobre los límites de detección y "cut off's" en la detección de cocaína en la orina; (8) copia de las calibraciones de todos los instrumentos o equipos que se hayan usado en la detección de cocaína en la orina; y (9) copia de todos los informes de laboratorio que tengan relación con sus muestras.

Un análisis de la solicitud sobre descubrimiento de prueba presentada ante la C.I.P.A. nos lleva a concluir, de conformidad con el Tribunal de Circuito de Apelaciones, que la información solicitada por el señor Félix Ramírez Ferrer era pertinente, relevante y necesaria para presentar e ilustrar a ese organismo administrativo sobre su posición, estaba al alcance inmediato del Instituto, y no resultaba onerosa. El autorizar el descubrimiento de la información solicitada no acarreaba un atraso indebido en los procedimientos ante la agencia administrativa, todo lo contrario, propiciaba una solución justa y rápida.

A la luz de estos hechos y al amparo del derecho constitucional del agente de la Policía expulsado a un debido proceso de ley, **es forzoso concluir que el abogado-examinador abusó de su discreción al negarle al señor Félix Ramírez Ferrer acceso a los documentos solicitados**. Un análisis ponderado de los intereses en controversia nos llevan a resolver que el abogado-examinador debió darle un peso adecuado al interés

---

[59] D. Fernández, op. cit., pág. 159.

legítimo que tenía el agente de la policía expulsado en descubrir aquellos documentos relacionados con la toma, análisis y manejo de la prueba de dopaje. Adviértase, que a pesar de que el uso de pruebas científicas goza de gran aceptación, estas están sujetas a error.[60]

La actuación del abogado-examinador privó al señor Félix Ramírez Ferrer de un efectivo ejercicio de su derecho a una vista formal, parte fundamental de la garantía constitucional a un debido proceso de ley.[61] Como corolario de esa garantía se encuentra el derecho de una parte afectada por una determinación administrativa a **"presentar toda la prueba necesaria para sostener su reclamo, así como refutar oralmente o por escrito la evidencia sometida en su contra"**.[62]

El facilitar el acceso del señor Félix Ramírez Ferrer a los documentos relacionados directamente con su expulsión del Departamento de la Policía, no constituía, bajo las circunstancias particulares de este caso, de forma alguna, un obstáculo a una solución justa y rápida de la controversia.

V

Por los fundamentos anteriormente expuestos, se confirma la sentencia recurrida, emitida por el Tribunal de Circuito de Apelaciones.

---

[60] H.M. Brau del Toro, <u>Nociones sobre la naturaleza y el fundamento de la cadena de evidencia en casos científico-legales</u>, 43 Rev. Col. Ab. P.R. 421 (1982).

[61] Sec. 3.1 de la Ley de Procedimiento Administrativo Uniforme, <u>supra</u>.

Se dictará sentencia de conformidad.

---

[62] <u>López Vives v. Policía de P.R.</u>, <u>supra</u>, pág. 231 (1987).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Félix Ramírez Ferrer

    Recurrido

      v.

                  CC-2001-570    Certiorari

Policía de Puerto Rico

    Peticionario


SENTENCIA


San Juan, Puerto Rico, a 26 de diciembre de 2002.

**Por los fundamentos expuestos en la Opinión <u>Per Curiam</u> que antecede, la cual se hace formar parte íntegra de la presente, se confirma la sentencia recurrida, emitida por el Tribunal de Circuito de Apelaciones**

**Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo.  El Juez Asociado señor Hernández Denton concurre "por entender que el derecho al uso de los mecanismos de descubrimiento de prueba en los procesos adjudicativos administrativos, en casos en donde es la propia agencia quien promueve el procedimiento, se desprende del artículo 3 de la Ley de Procedimiento Administrativo Uniforme.   Dicho artículo expresamente dispone:**

**Los procedimientos de descubrimiento de prueba no serán de aplicación a los casos de adjudicación administrativa, a menos que se**

autoricen en los reglamentos de procedimiento de adjudicación de la agencia y así lo autorice el funcionario que preside el procedimiento adjudicativo. <u>No obstante lo anteriormente expuesto, en los reglamentos de las agencias se garantizará a todo querellado el derecho a los mecanismos de descubrimiento de</u>

<u>prueba para los casos en que el procedimiento de adjudicación sea promovido a iniciativa de la agencia.</u> (Énfasis suplido.) 3 L.P.R.A. sec. 2158."

El Juez Asociado señor Fuster Berlingeri concurre, sin opinión escrita. El Juez Presidente señor Andréu García no intervino.


                         Patricia Otón Olivieri
                     Secretaria del Tribunal Supremo