Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| PEDRO JANER MARTÍNEZ, POR SÍ Y EN REPRESENTACIÓN DE LOS CRIOLLOS DE CAGUAS CLASE "A"<br><br>APELANTE<br><br>v<br><br>HÉCTOR VÁZQUEZ MUÑIZ EN REPRESENTACIÓN DEL DEPARTAMENTO DE RECREACIÓN Y DEPORTES DE PUERTO RICO; ESTADO LIBRE ASOCIADO DE PUERTO RICO POR CONDUCTO DE LA SECRETARÍA DE JUSTICIA HON. LOURDES GÓMEZ TORRES<br><br>APELADOS<br><br>PEDRO MORALES, EN SU CARÁCTER DE APODERADO DE LOS AZUCAREROS DE YABUCOA CLASE "A"<br><br>PARTE CON INTERÉS | TA2025AP00058 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2025CV05822<br><br>Sobre: Sentencia declaratoria, entredicho provisional, injunction preliminar y/o remedio provisional |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, y el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 24 de julio de 2025.

El 27 de junio de 2025, el señor Pedro Janer Martínez, por sí y en representación de los Criollos de Caguas Clase A (señor Janer Martínez o parte apelante) presentó un recurso de *Apelación* en el que nos solicitó que revoquemos la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario) el 26 de junio de 2025, notificada y archivada en autos

digitalmente el 27 de junio de 2025.[1] Mediante dicho dictamen, el TPI desestimó la solicitud de entredicho provisional e *injunction* preliminar.

Junto al recurso, el señor Janer presentó una *Moción auxilio de jurisdicción.*

En esa misma fecha, emitimos una *Resolución* en la que declaramos No Ha Lugar la solicitud de orden de auxilio de jurisdicción y concedimos a la parte apelada hasta el 11 de julio de 2025 para presentar su alegato en oposición.

El 30 de junio de 2025, la parte apelante presentó una *Urgente moción de reconsideración sobre auxilio de jurisdicción.*

Ese mismo día, emitimos una *Resolución* en la que declaramos No Ha Lugar la solicitud de reconsideración. La parte apelante recurrió al Tribunal Supremo, que denegó la *Urgente solicitud de certiorari* y la *Moción en auxilio de jurisdicción.*

El 9 de julio de 2025, el Departamento de Recreación y Deportes (DRD) radicó una *Moción de comparecencia y solicitud de breve prórroga* en la que informó su representación legal y nos solicitó una breve prórroga para presentar su alegato en oposición.

El 10 de julio de 2025, la parte apelante presentó un *Urgente remedio provisional* en la que nos solicitó que concediéramos un remedio provisional para una participación provisional de los jugadores.

Ese mismo día, denegamos el *Urgente remedio provisional* solicitado por la parte apelante.

Además, emitimos una *Resolución* en la que concedimos al DRD hasta el 14 de julio de 2025 para presentar su alegato.

---

[1] Véase la Entrada Núm. 4 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Caso (SUMAC) del TPI.

El 14 de julio de 2025, el DRD presentó una *Oposición a apelación* en la que solicitó que confirmemos la *Sentencia parcial* apelada.

El 15 de julio de 2025, el DRD presentó una *Moción para que se considere sometido el recurso,* toda vez que el Estado Libre Asociado (ELA), por conducto del Departamento de Justicia, no ha comparecido por lo que solicitó que se considere sometido sin la oposición del ELA. Resolvimos que el caso quedó sometido para ser resuelto.

Con el beneficio de la comparecencia de ambas partes, damos por perfeccionado el recurso, y, en adelante, pormenorizamos los hechos procesales atinentes a la *Apelación.*

**I.**

El caso de marras tuvo su génesis el 25 de junio de 2025, cuando el señor Janer Martínez presentó digitalmente una *Demanda* sobre sentencia declaratoria, entredicho provisional e *injunction* preliminar contra Héctor Vázquez Muñiz, en representación del DRD; el ELA, por conducto de la Secretaria de Justicia en su capacidad de representante del Estado y agencias como el DRD; y el señor Pedro Morales como parte con interés.[2] En resumen, alegó que el 7 de septiembre de 2024, recibió un mensaje de texto a través de un grupo en la aplicación de *WhatsApp* del coordinador de la Región de Humacao del Torneo de Beisbol Clase A, el cual leía que, debido a una situación ocurrida el 4 de septiembre de 2024 en un juego entre los Criollos —equipo del cual el apelante es apoderado—, y el equipo de los *Indians*, se había tomado la decisión de suspender al equipo de los Criollos por lo que restaba del torneo.

Según las alegaciones, la vista administrativa sobre tales hechos fue celebrada el 18 de septiembre de 2024 ante el DRD y en

---

[2] Véase Entrada Núm. 1 del expediente digital del caso en SUMAC-TPI.

ella el apelante solicitó la desestimación del caso bajo el argumento de un presunto incumplimiento con la reglamentación aplicable. Posteriormente, el vicepresidente del torneo le remitió al apelante las resoluciones relacionadas a diez (10) jugadores del equipo que habían sido suspendidos por veinte (20) juegos. Ante ello, el apelante manifestó que el 4 de octubre de 2024 presentó una apelación ante el Oficial Examinador designado por el DRD conforme al Artículo 14.02 del Reglamento del Beisbol Clase "A" Torneo Elfren Bernier, Reglamento Núm. 9558 del 10 de mayo de 2024. El 13 de diciembre de 2024, el Oficial Examinador emitió una resolución mediante la cual desestimó la apelación bajo el fundamento de falta de jurisdicción y apercibió al apelante sobre su derecho a presentar reconsideración.

Alegó además, que en la *Resolución* desestimando la apelación, se le advirtió que cada uno de los diez (10) jugadores sancionados debía presentar una apelación individual, acompañada de un pago de $450.00 cada una. Por lo que tendría que pagar $4,500.00 para tener acceso al trámite administrativo.

El apelante alegó que no recibió una querella formal, se le convocó mediante mensajes de texto informales y se le negó el acceso a la prueba. Por su parte, adujo que cumplió con todas sus obligaciones como apoderado y que, previo al inicio del torneo del año actual, se le negó la participación de varios jugadores involucrados en el incidente antes mencionado. Por ello, solicitó que se declaren nulas e ilegales las actuaciones del DRD en contra del equipo Criollos de Caguas Clase A.

El 26 de junio de 2025, el señor Janer Martínez presentó una *Urgente solicitud reiterando remedios interdictales* en la que reiteró su solicitud para que se le conceda un remedio interdictal.[3]

---

[3] Véase Entrada Núm. 3 del expediente digital del caso en SUMAC-TPI.

En esa misma fecha, el TPI emitió una *Sentencia Parcial* en la que desestimó la solicitud de entredicho provisional e *injunction* preliminar presentada por la parte apelante.[4] El foro primario resolvió que la parte apelante tenía a su haber un remedio adecuado en ley, mediante el proceso reglamentado en la sección de "Protestas, Querellas, Procedimientos Adjudicativos" del Reglamento Núm. 9558.

Inconforme con la determinación, el 27 de junio de 2025, la parte apelante acudió ante nos mediante este recurso de *Apelación* e hizo el siguiente señalamiento de error:

> Erró el Tribunal de Primera Instancia al concluir que el apelante disponía de un remedio adecuado en ley y, consecuentemente, denegar el remedio solicitado, ya que (a) las circunstancias del caso demostraban que el injunction era el único remedio eficaz para prevenir un daño irreparable y evitar que la controversia se tornara académica, (b) el foro primario omitió considerar su facultad para conceder un remedio provisional al amparo de la Regla 56 de Procedimiento Civil, para así asegurar la efectividad de una futura sentencia, y (c) en consideración a que se planteaban actuaciones nulas e ilegales del DRD, el foro judicial tenía la autoridad de atender la controversia sin necesidad de que se agotaran remedios administrativos.

La parte apelante sostuvo que el foro primario erró al concluir que debía continuar en un proceso administrativo que, a su juicio, fue nulo. Arguyó que el caso de marras cae dentro de las excepciones a la doctrina de agotamiento de remedios administrativos, requiriendo la intervención inmediata del foro judicial. Alegó que el requerírsele radicar diez (10) apelaciones individuales para impugnar diez sanciones que surgieron de un mismo incidente no es un remedio adecuado. También arguyó que era innecesario agotar un remedio ante un organismo administrativo que carecía de jurisdicción.

Junto al recurso, presentó una *Moción en auxilio de jurisdicción* en la que solicitó que ordenáramos la inscripción de los jugadores de forma que pudiera participar del torneo o, en la

---

[4] Véase Entrada Núm. 4 del expediente digital del caso en SUMAC-TPI.

alternativa, la paralización o posposición del inicio del torneo. Dicha solicitud y la posterior reconsideración a nuestra determinación, fueron denegadas.

Inconforme con nuestra *Resolución* declarando No Ha Lugar a la solicitud de orden en auxilio de jurisdicción y a la reconsideración, el 3 de julio de 2025, la parte apelante presentó ante el Tribunal Supremo, una *Urgente moción de auxilio de jurisdicción* y una *Urgente solicitud de certiorari.*[5] Ese mismo día, el Tribunal Supremo emitió una *Resolución* en la que declaró No Ha Lugar a ambas peticiones presentadas por la parte apelante de epígrafe.[6] El máximo foro judicial expresó que confiaba en que este tribunal resolverá este recurso con la celeridad que amerita.

Por su parte, el 14 de julio de 2025, el DRD presentó una *Oposición a apelación.* Arguyó que el remedio solicitado por el peticionario fue denegado correctamente porque la solicitud no cumple con los requisitos estatutarios.

Adujo que el daño alegado por el apelante es uno económico y por ello reparable y resarcible por la vía ordinaria. Arguyó que la apelante tenía a su disposición el proceso establecido en el Reglamento Núm. 9558 para su reclamo. Asimismo, señaló que conforme al Reglamento, las querellas y protestas deberá dilucidarse mediante los procedimientos adjudicativos y el pago de derechos allí establecidos.

Cónsono con lo intimado por el Tribunal Supremo, resolvemos el caso de forma inmediata.

**II.**

**A.**

Como parte de la función de un tribunal apelativo, este no intervendrá ante la discreción del foro primario, salvo que demuestre

---

[5] Véase Entrada núm. 10 del expediente digital del caso en SUMAC-TA

[6] CC-2025-410. Véase Entrada núm. 8 del expediente digital del caso en SUMAC-TA.

que el TPI actuó con perjuicio o parcialidad o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial. ***Lluch v. España Service Sta.***, 117 DPR 729, 748 (1986). En lo pertinente, la discreción judicial se ha definido como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." ***Banco Popular de Puerto Rico v. Gómez Alayon***, 213 DPR 314, 335 (2023). La discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del derecho. Íd. Cónsono con lo anterior, el Tribunal Supremo ha definido la discreción judicial como:

El Tribunal Supremo de Puerto Rico ha definido la discreción judicial de la siguiente forma:

> El concepto legal de la discreción no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho, sino la obligación de aplicar las reglas del conocimiento distintivo a ciertos hechos jurídicos con el objeto de mitigar los efectos adversos de la Ley, a veces diferenciando unos efectos de otros. Discreción es, pues, una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera, cuando los elementos coactivos de una Ley resultan superiores a los elementos reparadores. ***Pueblo v. Sánchez González***, 90 DPR 197, 200 (1964).

Como la discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera, en la medida que el curso de acción de un tribunal en el ejercicio de su discreción para conducir los procedimientos sea irrazonable o poco sensato, en esa medida estará abusando de su discreción. ***Ramírez v. Policía de P.R.***, 158 DPR 320 (2002).

**B.**

La Regla 57 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 57 y el Código de Enjuiciamiento Civil, 32 LPRA sec. 3521 *et seq.* regulan el recurso extraordinario del *injunction* en nuestro ordenamiento. En particular, la Regla 57 de las de Procedimiento

Civil, *supra*, R.57 establece la existencia de tres modalidades de *injunction*, a saber: (a) el entredicho provisional, (b) el *injunction* preliminar y (c) el *injunction* permanente.

La Regla 57.3 de Procedimiento Civil, *supra*, R. 57.3, prescribe que para expedir una orden de entredicho provisional o *injunction* preliminar, el Tribunal deberá considerar los siguientes criterios: (a) naturaleza del daño a que está expuesto la parte peticionaria; (b) la irreparabilidad del daño o la inexistencia de un remedio adecuado en ley; (c) la probabilidad de que la parte promovente prevalezca; (d) la probabilidad de que la causa se torne académica; (e) el impacto sobre el interés público del remedio que se solicita; y (f) la diligencia y buena fe con que ha obrado la parte peticionario. Véase, además: ***Misión Ind. P.R. v. J.P. y A.A.A.***, 142 DPR 656, 679-680 (1997).

En Puerto Rico, el interdicto es el instrumento más eficaz para vindicar los derechos protegidos por nuestra Constitución. ***Pedraza Rivera v. Collazo Collazo,*** 108 DPR 272, 276 (1979). Este remedio provisional se emite en cualquier momento de un pleito, después de celebrada una vista en la que las partes hayan presentado prueba en apoyo y en oposición de tal solicitud. ***Mun. De Ponce v. Gobernador***, 136 DPR 776, 784 (1994). Su propósito fundamental es mantener el *status quo,* hasta tanto se celebre un juicio en los méritos para adjudicar la controversia en cuestión. ***Asoc. Vec. Villa Caparra v. Asoc. Fom. Educativo***, 173 DPR 304, 316 (2008). Con la expedición de una orden de *injunction* preliminar, sea para requerir o prohibir un acto, se evita que la conducta del demandado produzca una situación que pueda convertir en académica los reclamos del demandante y, por ende, la sentencia que en su día se dicte. Íd.

El recurso de *injunction* es de carácter discrecional. El peso de la prueba recaerá sobre la parte promovente, quien tendrá la obligación de demostrar al tribunal la **ausencia de un remedio**

**adecuado en ley**, que es aquel que puede ser otorgado en una acción de daños, una criminal o cualquier otra disponible. ***Pérez Vda. Muñiz v. Criado***, 151 DPR 355, 373 (2000). "Mientras exista algún remedio eficaz, completo y adecuado en ley, no se considera el daño como irreparable". Íd., pág. 372. La parte promovente del *injunction* deberá "demostrar que de no concederse este antes de adjudicarse el caso en sus méritos, sufriría daño irreparable", ***Misión Ind. P.R. v. J.P. y A.A.A.***, supra, pág. 682.

El concepto del "daño irreparable" en el contexto del remedio en equidad de *injunction* se refiere a "aquel que no puede ser adecuadamente satisfecho mediante la utilización de los remedios legales disponibles […], o a aquel que no puede ser apreciado con certeza ni debidamente compensado por cualquier indemnización que pudiera recobrarse en un pleito en ley". ***Misión Ind. P.R. v. J.P. y A.A.A.***, supra, pág. 681.

En cambio, son daños reparables aquellos que la parte puede resarcir mediante otro remedio adecuado en ley. Tal es el caso de los daños monetarios los cuales, de ordinario, son daños reparables. ***Mun. de Ponce v. Gobernador***, supra, pág. 786. Ahora bien, una reclamación monetaria no excluye el remedio de *injunction* si resulta necesario para mantener el *status quo*, para evitar que el paso del tiempo deje al demandante sin un remedio efectivo y para proteger un derecho propietario del demandante amenazado por un apremiante acto ilegal del demandado. Íd.

### C.

Por otro lado, como norma de autolimitación judicial, se ha adoptado la doctrina de agotamiento de remedios administrativos, la cual determina "la etapa en que un tribunal de justicia debe intervenir en una controversia que se ha presentado inicialmente ante un foro administrativo." ***S.L.G. Flores-Jiménez v. Colberg***, 173 DPR 843, 851 (2008) (citando a ***Asoc. Pesc. Pta. Figueras v.***

*Pto. Del Rey*, 155 DPR 906, 916-917 (2001)); **Mun. de Caguas v. AT & T**, 154 DPR 401, 407 (2001). Mediante esta, los tribunales se abstienen de revisar una actuación de una agencia hasta tanto la persona afectada agote todos los remedios administrativos que tiene disponible, de manera que la decisión administrativa refleje la posición final de la entidad estatal. **Procuradora Paciente v. MCS**, 163 DPR 21, 35 (2004). De ordinario, esta norma aplica a los casos en los que una parte que instó o tiene instada una acción ante una agencia gubernamental o algún ente administrativo recurre al tribunal sin antes haber culminado todo el trámite que tenía disponible en ese foro. **Municipio de Caguas v. AT & T**, supra, pág. 408. O sea, se invoca para cuestionar una acción judicial promovida por un litigante que originalmente participó en un procedimiento administrativo y luego recurrió al foro judicial teniendo todavía remedios administrativos disponibles. Íd. Lógicamente, la aplicación de esta doctrina requiere, por un lado, la preexistencia de un procedimiento administrativo que comenzó, pero no finalizó porque la parte acudió al foro judicial; mientras que, por el otro, es necesario que aún exista alguna fase del procedimiento que la parte debe agotar. Íd., pág. 409.

En cuanto a su razón de ser, la doctrina de agotamiento de remedios administrativos pretende evitar que se presente un recurso ante los tribunales sin que la agencia administrativa haya tomado una determinación final en el asunto. **Hernández, Romero v. Pol. de P.R.**, 177 DPR 121, 136 (2009). De esta forma, también se fomenta que los organismos utilicen y apliquen su conocimiento especializado al dirimir las controversias. **S.L.G. Flores-Jiménez v. Colberg**, supra, pág. 852.

Estatutariamente, la doctrina de agotamiento de remedios está codificada en la Sección 4.2 de la *Ley de Procedimiento Administrativo Uniforme*, Ley Núm. 38 de 2017, según enmendada,

3 LPRA sec. 9672, (LPAU). En ella, se establece que la parte adversamente afectada por una determinación administrativa, una vez haya agotado todos los remedios provistos por la agencia o el organismo administrativo apelativo correspondiente, podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones. Asimismo, prescribe que la revisión judicial será el recurso exclusivo para revisar en los méritos una decisión administrativa, sea de naturaleza adjudicativa o informal.

Ahora bien, la exigencia de agotar todos los remedios no es un principio de aplicación inflexible. *S.L.G. Flores-Jiménez v. Colberg*, supra, pág. 853; *Asoc. Pesc. Pta. Figueras v. Pto. del Rey*, supra, pág. 917. En virtud de ello, la Sección 4.3 de la LPAU, dispone que se podrá eximir a una parte de agotar remedios ante la agencia cuando: (1) el remedio sea inadecuado; (2) el requerir su agotamiento resulta en un daño irreparable al promovente; (3) en un balance de intereses, no se justifica agotar los remedios; (4) cuando se alegue una violación sustancial de los derechos constitucionales; (5) sea inútil agotar los remedios por la dilación excesiva en el procedimiento; (6) cuando la agencia administrativa carezca de jurisdicción; o (7) el asunto es estrictamente de derecho y resulta innecesaria la pericia administrativa. *S.L.G. Flores-Jiménez v. Colberg*, supra, pág. 852.

### III.

En el caso de marras, la parte apelante nos solicitó que revoquemos la *Sentencia Parcial* emitida por TPI mediante la cual desestimó la solicitud de entredicho provisional e *injunction* preliminar, al concluir que la parte apelante tenía a su haber un remedio adecuado en ley en el foro administrativo. La parte apelante alegó que su reclamo cae dentro de las excepciones a la doctrina de agotamiento de remedios administrativos y que, por ello, se permite la intervención del foro judicial.

Por su parte, el DRD arguyó que el Oficial Examinador, en cada una de las resoluciones expedidas, apercibió sobre el derecho a solicitar revisión pero que, aun así, el apelante presentó un sólo escrito de apelación en lugar de presentar uno por cada resolución expedida, es decir, diez (10). Por ello, sostuvo que el apelante incumplió con el proceso establecido en el Reglamento Núm. 9558 y privó al DRD de ejercer su jurisdicción. Ante ello, argumentó que la existencia de dicho mecanismo procesal hace que el TPI no errara al desestimar el reclamo. Además, un daño irreparable es inexistente por ser uno económico, por lo que impide que se conceda un remedio interdictal.

Tras un análisis objetivo, sereno y cuidadoso del expediente del caso y de los argumentos esbozados por las partes, en correcta práctica adjudicativa apelativa, resolvemos que el TPI no incidió en el error señalado. El TPI actuó correctamente al desestimar la solicitud de entredicho provisional e *injunction* preliminar solicitados en la *Demanda*, toda vez que en virtud del Reglamento Núm. 9558, existe un remedio administrativo mediante el cual el señor Janer Martínez, en representación del equipo de Criollos de Caguas, pudo solicitar la reconsideración de las decisiones en apelación del Oficial Examinador designado por el DRD.

Obsérvese que, el Artículo 14.02 del Reglamento Núm. 9558 permite la presentación de una apelación en protesta de la elegibilidad de un participante. Además, según el Artículo 14.03 del antedicho Reglamento, el apoderado que no esté de acuerdo con la decisión en apelación del Oficial Examinador designado por el DRD podrá radicar una solicitud de reconsideración ante el Secretario del DRD dentro de los tres (3) días laborables luego de recibir la decisión.

Según se desprende del expediente, la parte apelante presentó una apelación ante el Oficial Examinador designado por el DRD. La

determinación del Oficial Examinador fue desestimar el recurso por falta de jurisdicción dado a que el apelante presentó una sola apelación sobre diez (10) resoluciones relacionadas a diez (10) jugadores del equipo. Mediante la antedicha determinación, la parte apelante fue apercibida de su derecho a presentar una solicitud de reconsideración, cosa que no hizo. En cambio, ésta recurrió al TPI en solicitud de remedios interdictales, sin antes continuar a través del proceso administrativo establecido mediante la reglamentación concerniente.

Resolvemos que la parte apelante tuvo un remedio adecuado en Ley para resolver su reclamo y no siguió el trámite administrativo aplicable.

Por lo anterior, concluimos que el TPI no cometió el error imputado por lo que corresponde que confirmemos la *Sentencia parcial* apelada.

**IV.**

Por los fundamentos expuestos, se confirma la *Sentencia Parcial* apelada.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones