Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| **WM CAPITAL PARTNERS 53, LLC**<br><br>Apelante<br><br><br>v.<br><br><br>**BARRERAS, INC., Y GABLES TOWERS, INC.**<br><br>Apelados | KLAN202201029 | **APELACION**<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: **SJ2020CV01220 (807)**<br><br><br>Sobre: **Regla 49.2 (1) de Procedimiento Civil; Pleito Independiente de Sentencias y Órdenes; Sentencia Declaratoria** |

Panel integrado por su presidente el juez Hernández Sánchez, la juez Santiago Calderón y el juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 16 de noviembre de 2023.

Comparece ante nos, WM Capital Partners 53, LLC, en adelante, Capital o apelante, solicitando que revisemos la *"Sentencia"* emitida sumariamente por el Tribunal de Primera Instancia de San Juan, en adelante, TPI-San Juan, el 3 de marzo de 2022. La misma fue notificada el 4 de marzo de 2022. En la sentencia recurrida, el Foro Primario desestimó la *"Demanda Enmendada"* de Capital en contra de Barreras, Inc., en adelante, Barreras y de Gables Towers Inc., en adelante, Gables, Gables o apelada. En el pleito que incoó, al amparo de la Regla 49.2 (1) de Procedimiento Civil, 32 LPRA Ap. V, R. 49.2, sobre Pleito Independiente de Nulidad de Orden, Capital solicitó al Foro Primario

---

[1] Véase Orden Administrativa OATA-2023-131 del 14 de julio de 2023, donde se designa al Juez Alberto Luis Pérez Ocasio en sustitución de la juez Alicia Álvarez Esnard.

que, entre otras cosas, decretara la nulidad de la Sentencia emitida por el TPI-San Juan el 18 de diciembre de 2017.

Por los fundamentos que expondremos a continuación, *desestimamos el recurso de epígrafe por falta de jurisdicción.*

**I.**

La situación de hechos que versa sobre la controversia que nos trae Capital comienza en el año 2020. Sin embargo, algunos de los hechos que forman parte de los principios del tracto procesal ante esta Curia, se remontan al *año 1960.*

Por lo extenso y complejo de los eventos que contextualizan la controversia, nos limitaremos a hacer una sucinta enumeración de los hechos más importantes. Para los fines de que este Tribunal pudiera obtener un marco procesal y fáctico completo, la apelada trae a nuestra atención la *"Resolución"* de un panel hermano de este Foro en el año 2018 (KLCE201800350) adjuntado en el apéndice del recurso.[2] Refiriéndonos exclusivamente a la mencionada resolución, y los recursos de las partes, hacemos el siguiente desglose de hechos:

1. En el 1960, Barreras y el First National City Bank of New York crean un contrato de arrendamiento con derecho a edificar. En ese suelo se construyó una estructura que consta de dos (2) edificios, con el número de finca 35,957. El contrato dispone que, si el mismo culmina, Barreras se convertiría en el dueño de la edificación construida, sin gravámenes ni cargas. También impuso en la arrendadora la responsabilidad de pagar los impuestos (CRIM).

2. El First National City Bank of New York cede su arrendamiento, y eventualmente lo adquirió Gables en el año 2005, quien continuó pagando los cánones de arrendamiento y manteniendo el edificio construido.

3. Gables solicitó unos prestamos de R.G. Premier Bank, y garantizó los mismos hipotecando el edificio y el arrendamiento de este.

---

[2] Apéndice del recurso, págs. 92-106.

4. La garantía de lo prestamos de Gables es eventualmente adquirida por Scotia Bank, y posteriormente por Capital.

5. El 17 de julio de 2012, Scotiabank, *hoy Capital*, presentó una demanda en cobro de dinero y ejecución de garantías contra Gables por incumplimiento con unos términos del contrato de arrendamiento. Barreras solicitó intervención en este pleito, alegando que Capital pretendía ejecutar unas garantías que recaían sobre unos bienes en los cuales reclamaba tener un interés propietario.

6. El 1 de octubre de 2013, Barreras le comunicó a Gables que deseaba cancelar el contrato de arrendamiento, por no haber pagado el CRIM, consolidándose así una deuda que ascendía los $800,000, y la falta de mantenimiento sobre los inmuebles objetos del contrato de arrendamiento.

7. Luego de unos intentos infructuosos para liquidar la deuda con Gables, Barreras presentó una demanda de desahucio contra ella el 28 de octubre de 2013. El TPI-San Juan declaró la misma "Ha Lugar". Sin embargo, un Tribunal de Apelaciones revocó la sentencia (KLAN201401068 y KLAN201401070). El panel hermano concluyó que el Foro Primario carecía de jurisdicción para adjudicar la controversia, ya que las partes del contrato de arrendamiento, según lo estipulado en este, estaban obligadas a resolver cualquier controversia referente a incumplimientos contractuales, mediante arbitraje.

8. Scotiabank solicitó intervenir en esta demanda, pero fue denegada por el Foro Primario. Luego, presentó un recurso de *Certioari* al Tribunal de Apelaciones, quien denegó expedir el auto.

9. El 18 de junio de 2014, el TPI-San Juan declaró "Ha Lugar" la petición de Barreras para intervenir en la demanda en cobro y ejecución de hipoteca.

10. En síntesis, Barreras argumentaba que, al amparo del contrato de arrendamiento, y el derecho de propiedad que adquirió por virtud de este sobre la finca 35,957, impedía la ejecución de hipoteca que pretendía Scotiabank. Por su parte, Scotiabank argüía que los préstamos que le hizo a Gables estaban garantizados con los edificios de la finca 35,957. Esto último era un derecho propietario a su favor, que lo facultaba a subrogarse en el contrato de arrendamiento con Barreras. Además, era la postura de Capital que no intervenir en estos procedimientos atentaba contra el debido proceso de ley.

11. El 31 de diciembre de 2014, Scotiabank y Gables presentaron conjuntamente un *"Acuerdo de transacción para que se dicte sentencia"*. El mencionado acuerdo contemplaba, entre otras cosas, la ejecución de las hipotecas que gravaban los bienes que Barreras, quien se opuso al acuerdo, y reclamaba como su propiedad.

12. El 5 de febrero de 2015, el TPI-San Juan no aprobó el acuerdo entre Gables y Scotiabank, por entender que la vigencia del arrendamiento entre Barreras y Gables, el cual se encontraba dilucidándose en un pleito de arbitraje, estaba aún en controversia.

13. Luego de una solicitud de reconsideración, el 28 de abril de 2015, el Foro Primario revocó su dictamen, determinando esta vez que el referido contrato de arrendamiento continuaba vigente, pues no existía dictamen alguno que decretara la resolución del mismo. Barreras solicitó una reconsideración que fue denegada. Luego, el 6 de agosto de 2015, recurrió al Tribunal de Apelaciones para impugnar el acuerdo transaccional. Sobre este asunto, el Foro Intermedio revoco al TPI-San Juan, por entender que la ejecución de dicho acuerdo ponía en riesgo los derechos de Barreras.

14. El 31 de agosto de 2015, Scotiabank le solicitó a la Asociación Americana de Arbitraje, en adelante, AAA, que le permitiera intervenir en el proceso de arbitraje entre Gables y Barreras, toda vez que poseía un derecho real hipotecario sobre la finca objeto del contrato de arrendamiento. El 21 de octubre de 2015, la AAA denegó la solicitud de intervención, por entender que la participación del mismo solo estaba sujeta a las partes del contrato, y que el asunto planteado por Scotiabank no está regulado por el negocio jurídico entre Gables y Barreras.

15. En su dictamen, la AAA concluyó que Gambles incumplió con una condición del negoció jurídico, lo que facultó a Barreras a terminar el contrato de arrendamiento.

16. El 31 de octubre de 2016, Gables recurrió al TPI-San Juan para impugnar el Laudo de Arbitraje. Capital compareció solicitando autorización para intervenir en el proceso de revocación del laudo.

17. El 16 de enero de 2017, Capital presentó una Demanda de Sentencia Declaratoria en la Corte Federal para el Distrito de Puerto Rico, en adelante, Tribunal Federal (Civil No. 17-1122). Luego de una intervención de Barreras, el

Tribunal Federal desestimó la demanda de Capital el 17 de agosto de 2022.

18. El 13 de febrero de 2017, el TPI-San Juan denegó la intervención de Capital, y el 6 de diciembre de 2017 denegó el recurso de Gables, oponiéndose al laudo.

19. El 15 de febrero de 2018, Barreras presentó una *"Moción en Solicitud de Orden en Ejecución de Sentencia"*. En atención a esta solicitud, el Foro Primario emitió una orden y mandamiento de ejecución, en el cual le ordenó al Registro de la Propiedad a inscribir el dominio de la finca 35,957 a favor de Barreras, libre de carga o gravamen. Es decir, ordenó la eliminación de las hipotecas a favor de Capital.

20. El 12 de marzo de 2018, Capital recurrió en alzada ante este Tribunal mediante un recurso de *Certiorari*, planteando que el TPI-San Juan, mediante su orden y mandamiento, eliminó las hipotecas de su tenencia, violando su derecho al debido proceso de ley.

21. El 30 de abril de 2018, el Tribunal de Apelaciones emitió una Resolución en la que desestimó el recurso de Capital, por falta de jurisdicción. Expresó el panel hermano en su dictamen que el Laudo de Arbitraje advino final y firme, luego que el TPI-San Juan denegara la revocación del laudo, denegó la revisión de este, y Gables ni Capital recurrieran al Tribunal de Apelaciones. Dispuso, además, que lo único que le restaba a Capital era incoar un pleito independiente de nulidad de sentencia.

22. El 1 de mayo de 2019, Barreras presentó un asiento de inscripción al Registro de la Propiedad, amparado en el mandamiento del TPI-San Juan.

23. El 24 de mayo de 2019, Capital presentó un asiento a su favor en el Registro de la Propiedad, amparado en un dictamen que obtuvo a su favor en el Tribunal Federal, previo a la desestimación del mismo.

24. Sin embargo, por medio de una Orden y mandamiento enmendado (*nunc pro tunc*), Barreras inscribió la finca en cuestión a su favor, libre del gravamen hipotecario.

25. El 20 de febrero de 2020, Capital presentó una *"Demanda"* bajo la Regla 49.2(1) de Procedimiento Civil, sobre nulidad de sentencia.

26. Poco tiempo después, el 10 de abril de 2020, Capital presentó una *"Moción de Sentencia Sumaria"*. En la misma, la Capital solicitó y argumentó lo siguiente:

a.      Se declarara la nulidad de la Sentencia emitida por el TPI-San Juan el 18 de diciembre de 2017 (Civil Núm. K AC2016-1090 (908).

b.      Se debió añadir como parte indispensable en el caso precitado, y como no se añadió, la sentencia es nula.

c.      No se puede utilizar lo resuelto en el mencionado caso para afectar los derechos propietarios de Capital, y que así hacerlo es una violación al debido proceso de ley.

d.      Que se decrete que ni el Laudo de Arbitraje, ni ninguna orden al amparo del mismo, es ilegal y nula en lo que concierne a Capital, por no haber este último pactado nada con las partes para someter las controversias a la American Arbitration Association.

e.      Decrete la nulidad del asiento presentado por Barreras en el Registro de la Propiedad, amparado en el dictamen del caso Civil Núm. K AC2016-1090 (908), por entender que el mismo priva a Capital de su derecho propietario.

f.      Decrete que Barreras está impedida de litigar cuestión alguna sobre los derechos de subrogación de Capital bajo el contrato de arrendamiento del año 1960, por ser la misma (en aquel momento) objeto de controversia ante el Tribunal Federal.

27.     El 24 de agosto de 2020, Barreras presentó su *"Oposición a Moción de Sentencia Sumaria y Solicitud de Sentencia Sumaria de Barreras, Inc.".* En su moción, el demandado se opone alegando que:

a. Los acreedores hipotecarios sobre arrendamientos inscritos nunca han sido reconocidos como partes indispensables en los pleitos de terminación de contrato de arrendamiento y desahucio.

b. Capital no era parte indispensable en el pleito cuya nulidad solicita. Además, indica que no hay jurisdicción para que Capital relitigue su intervención, mediante la regla 49.2 de Procedimiento Civil.

c. Capital no tiene derecho a que se dicte sentencia sumaria a su favor, ya que el único interés que tuvo Capital fue sobre el arrendamiento con derecho a edificar en suelo ajeno de Gables. Como ese contrato ya no existe, por el incumplimiento de Gables, tampoco el interés hipotecario que alega tener el Capital.

28.	El 15 de septiembre de 2020, Capital presentó su *"Oposición a Moción de Sentencia de Barreras, Inc.".* En su oposición, Capital argumenta que:

a. Los acreedores hipotecarios son partes indispensables en cualquier causa de acción en donde puedan quedar afectadas sus garantías.

b. No está relitigando su derecho a intervenir, sino que busca la nulidad de una sentencia que ordenó la eliminación de unas hipotecas, afectando su derecho propietario sobre las garantías de estas, y violentando el debido proceso de ley.

c. Que la regla 49.2 de Procedimiento Civil es la vía correcta para dejar sin efecto la sentencia recurrida, y anular los procedimientos que culminaron en la eliminación de los gravámenes hipotecarios a su favor.

29.	El 3 de marzo de 2022, el TPI-San Juan emitió una "Sentencia" en la que declaró "No Ha Lugar" la *"Moción de Sentencia Sumaria"* y la *"Oposición a Moción de Sentencia Sumaria de Barreras, Inc.",* presentada por Capital. A su vez, declaró "Ha Lugar" la *"Oposición a Moción de Sentencia Sumaria y Solicitud de Sentencia Sumaria de Barreras, Inc.".* El Foro Primario sostuvo su determinación en las siguientes conclusiones:

a. Quien es parte indispensable depende de los hechos de cada caso. Explica el TPI-San Juan que Capital, en efecto, intentó intervenir en los procedimientos de arbitraje, y le fue denegado. También, intentó intervenir en la demanda de desahucio que Barreras levantó contra Gables. Sin embargo, su solicitud fue igualmente rechazada, pero no impugnada por Capital. Argumenta el Tribunal que esta inacción provocó que las denegatorias adviniera final y firme.

b. Las limitaciones de un proceso de arbitraje se circunscriben al mandato que lo faculta. En este caso, el Contrato de Arrendamiento entre Barreras y Gables facultaba a las partes a dilucidar sus controversias mediante arbitraje, pero nada decía sobre acreedores hipotecarios.

c. Los reclamos de parte indispensable, debido proceso de ley y nulidad de laudo debieron ser objeto de un recurso de revisión, una vez el TPI-San Juan confirmó el laudo de arbitraje. Indica el Foro

Primario que la Regla 49 de Procedimiento Civil no puede servir de subterfugio para revisar lo que advino final y firme.

30. El 19 de marzo de 2022, Capital presentó una *"Reconsideración"* ante el Foro Primario. En su escrito, Capital argumentó, en esencia, <u>lo mismo</u> que planteo en su *"Moción de Sentencia Sumaria"* y en su *"Oposición a Sentencia Sumaria de Barreras, Inc"*:

a. El proceso del Laudo violento el derecho de la Capital a un debido proceso de ley.

b. Capital era parte indispensable en los procedimientos de arbitraje y en el TPI-San Juan, que se celebraron referente a la propiedad en controversia. Alega que por no habérsele permitido ser parte, son estos nulos.

c. No fue hasta que Barreras solicitó la eliminación de las hipotecas de Capital, y el TPI-San Juan lo autorizó, que entonces quedó facultado Capital para solicitar una revisión.

d. En su solicitud de ejecución de sentencia, Barreras buscaba se declarara la inexistencia de las garantías hipotecarias a favor de Capital, para luego argumentar que no hay remedio para la Capital, bajo la Ley del Registro de la Propiedad.

31. El 20 de abril de 2022, Barreras presentó su *"Oposición a Reconsideración"*. En su escrito, la Gables alega, entre otras cosas, que los fundamentos de la reconsideración solicitada por la Capital *son una repetición de sus previos escritos*. Arguye que esto hace insuficiente su solicitud, conforme lo exigen las Reglas de Procedimiento Civil. Esta insuficiencia, a su vez, *tiene el efecto de no interrumpir el término para recurrir mediante un recurso apelativo*.

32. Finalmente, el 14 de noviembre de 2022, el TPI-San Juan emitió una *"Resolución"*, en la que declaró "No Ha Lugar" la *"Reconsideración"* presentada por Capital y "Ha Lugar" la *"Oposición a Reconsideración"* presentada por Barreras. En la misma, el Foro Primario otorga razón al planteamiento de la Gables, y expone que *la reconsideración solicitada por la Capital es insuficiente en derecho, por lo que esta no procede.*

33. El 16 de diciembre de 2022, la apelante recurre ante esta Curia, apelando la sentencia emitida y notificada sumariamente por el Foro Primario el 4 de marzo de 2022.

En su recurso, presenta ante nos el siguiente señalamiento de error:

> ERRÓ EL TPI AL CONCLUIR QUE UN ACREEDOR HIPOTECARIO NO PUEDE PEDIR, BAJO LA REGLA 49.2 DE PROCEDIMIENTO CIVIL, LA NULIDAD DE UNA SENTENCIA QUE CONFIRMA UN LAUDO ARBITRAL EN EL QUE NO SE LE PERMITIÓ INTERVENIR, BAJO LA PREMISA QUE SUS DERECHOS HIPOTECARIOS NO QUEDARÍAN AFECTADOS, CUANDO EL LAUDO Y LA SENTENCIA QUE LO CONFIRMA ELIMINAN SU HIPOTECA SIN QUE HAYA PODIDO DEFENDERSE.

Con el beneficio de la oposición de la apelada, procedemos a disponer de los autos.

## II.

### A. Apelación

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *Íd.*, pág. 771; *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). De manera que, si la actuación del tribunal no está desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de instancia a quien corresponde la dirección del proceso. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414 (2013); *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

Sin embargo, la norma de deferencia esbozada encuentra su excepción y cede cuando la parte promovente demuestra que hubo un craso abuso de discreción, prejuicio, error manifiesto o parcialidad. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689 (2012). Además, se requiere que nuestra intervención en esta etapa

evite un perjuicio sustancial. *Rivera et al. v. Arcos Dorados et al.*, 2023 TSPR 65, 212 DPR ___ (2023); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

Por *discreción* se entiende el "tener poder para decidir en una forma u otra, esto es, para escoger entre uno o varios cursos de acción". *García v. Asociación*, 165 DPR 311, 321 (2005), citando a *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). No obstante, "el adecuado ejercicio de la discreción está inexorable e indefectiblemente atado al concepto de la razonabilidad". *Íd.* A esos efectos, el Tribunal Supremo de Puerto Rico ha indicado cuáles son situaciones que constituyen un abuso de discreción, a saber:

> [C]uando el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos. *Ramírez v. Policía de P.R.*, 158 DPR 320, 340-341 (2002), citando a *Pueblo v. Ortega Santiago*, supra, págs. 211-212.

Así, pues, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho. *Rivera et al. v. Arcos Dorados et al.*, supra.

### B. Jurisdicción

La jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos y controversias. *Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. Oficina de Gerencia de Permisos del Departamento de Desarrollo Económico y Comercio de Puerto Rico y otros*, 2023 TSPR 26, 211 DPR ___ (2023); *MCS Advantage, Inc. v. Fossas Blanco y otros*, 2023 TSPR 8, 211 DPR ___ (2023); *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384 (2022). Es por ello que, la falta de jurisdicción de un tribunal

incide directamente sobre el poder mismo para adjudicar una controversia. *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374, 386 (2020). Por tal razón, es norma reiterada que los tribunales son celosos guardianes de su jurisdicción y que tienen el deber ineludible de auscultar dicho asunto con preferencia a cualesquiera otros. *Pueblo v. Torres Medina*, 2023 TSPR 50, 211 DPR ___ (2023).

En ese sentido, en reiteradas ocasiones el Tribunal Supremo de Puerto Rico ha expresado que los tribunales tenemos el deber de proteger nuestra jurisdicción sin poseer discreción para asumirla donde no la hay. *Pueblo v. Ríos Nieves*, 209 DPR 264, 273 (2022). A esos efectos, las cuestiones de jurisdicción son de índole privilegiada y deben ser resueltas con preferencia. Íd.; *Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. Oficina de Gerencia de Permisos del Departamento de Desarrollo Económico y Comercio de Puerto Rico y otros*, supra.

Es por esto que las normas que rigen el perfeccionamiento de los recursos apelativos deben observarse de manera rigurosa. *Soto Pino v. Uno Radio Group*, 189 DPR 84, 90 (2013).

Ahora bien, los términos para la presentación o notificación de recursos apelativos pueden ser jurisdiccionales o de estricto cumplimiento. Los términos jurisdiccionales son fatales, pues no pueden ser prorrogados o extendidos, no importando las consecuencias procesales. *Rosario Domínguez et als. v. E.L.A,* 198 DPR 197, 208 (2017). Sin embargo, los términos de estricto cumplimiento pueden ser prorrogados o extendidos si existe justa causa para la dilación, y la misma es debidamente demostrada y acreditada ante el Tribunal. *Div. Empleados Públicos UGT v. CEMPR*, supra; *Rivera Marcucci et al v. Suiza Dairy*, supra, pág. 171; *Soto Pino v. Uno Radio Group*, supra, pág. 92.

Es decir, los términos jurisdiccionales que no se cumplen en el término prescrito por ley, y los términos de estricto cumplimiento

que no se observan sin justa causa, privan de jurisdicción al Tribunal que los atiende.

Un recurso presentado prematura o tardíamente priva insubsanablemente de jurisdicción y autoridad al tribunal ante el cual se recurre para atender el asunto, caso o controversia. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008). Estos tipos de recursos carecen de eficacia y no producen ningún efecto jurídico, pues, al momento de su presentación, su naturaleza prematura o tardía hace que el foro apelativo no tenga autoridad alguna para acogerlo. Id. Conforme a lo que antecede, este Tribunal de Apelaciones puede desestimar, motu proprio, un recurso prematuro o tardío por carecer de jurisdicción. Regla 83 (B) (1) y (C) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B.

En el caso de los recursos presentados ante el Tribunal de Apelaciones, que provengan de sentencias civiles, el término para recurrir es de carácter jurisdiccional. A esos efectos, expone el reglamento de este Foro lo siguiente:

> Las apelaciones contra las sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, se presentarán ***dentro del término jurisdiccional de treinta días*** contados desde el archivo en autos de una copia de la notificación de la sentencia.
>
> (Énfasis nuestro).
>
> Regla 13 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B. R. 13.

Por último, la Regla 83 (B) y (C) del Reglamento, supra, nos permite desestimar un recurso que se presentó sin jurisdicción, a solicitud de parte o a iniciativa propia. El mismo reza como sigue:

> (B) Una parte podrá solicitar en cualquier momento la desestimación de un recurso por los motivos siguientes:
> (1) que el Tribunal de Apelaciones carece de jurisdicción;

(2) que el recurso fue presentado fuera del término de cumplimiento estricto dispuesto por ley sin que exista justa causa para ello;

(3) que no se ha presentado o proseguido con diligencia o de buena fe;

(4) que el recurso es frívolo y surge claramente que no se ha presentado una controversia sustancial o que ha sido interpuesto para demorar los procedimientos, o

(5) que el recurso se ha convertido en académico.

(C) El Tribunal de Apelaciones, a iniciativa propia, podrá desestimar un recurso de apelación o denegar un auto discrecional por cualquiera de los motivos consignados en el inciso (B) precedente.

### C. Reconsideración

La Regla 47 de Procedimiento Civil, 32 LPRA Ap. V, R. 47, reza de la siguiente manera:

La parte adversamente afectada por una orden o resolución del Tribunal de Primera Instancia podrá, dentro del término de cumplimiento estricto de quince (15) días desde la fecha de la notificación de la orden o resolución, presentar una moción de reconsideración de la orden o resolución.

La parte adversamente afectada por una sentencia del Tribunal de Primera Instancia podrá, dentro del término jurisdiccional de quince (15) días desde la fecha de archivo en autos de copia de la notificación de la sentencia, presentar una moción de reconsideración de la sentencia.

*La moción de reconsideración debe exponer con suficiente particularidad y especificidad los hechos y el derecho que la parte promovente estima que deben reconsiderarse* y fundarse en cuestiones sustanciales relacionadas con las determinaciones de hechos pertinentes o conclusiones de derecho materiales.

*La moción de reconsideración que no cumpla con las especificidades de esta regla será declarada "sin lugar" y se entenderá que no ha interrumpido el término para recurrir.*

Una vez presentada la moción de reconsideración quedarán interrumpidos los términos para recurrir en alzada para todas las partes. *Estos términos comenzarán a correr*

*nuevamente desde la fecha en que se archiva en autos*
*copia de la notificación de la resolución resolviendo la*
*moción de reconsideración.*
[...]

(Énfasis nuestro)

El mecanismo procesal de la moción de reconsideración fue introducido en nuestra jurisdicción en el 1937, mediante el Código de Enjuiciamiento Civil de 1904. Ley Núm. 67 de 8 mayo de 1937, la cual enmendó el Art. 292 del Código de Enjuiciamiento Civil, 32 LPRA antes sec. 1251. El propósito de este mecanismo es permitirles a los tribunales rectificar cualquier error cometido en sus determinaciones. *Div. Empleados Públicos UGT v. CEMPR*, 2023 TSPR 107, 212 DPR ___ (2023); *Mun. Rincón v. Velázquez Muñiz y otros*, 192 DPR 989, 995 (2015); *Morales y otros v. The Sheraton Corp.*, 191 DPR 1, 7 (2014); *Interior Developers v. Mun. de San Juan*, 177 DPR 693, 701 (2009); *Lagares v. E.L.A.*, 144 DPR 601, 612 (1997). La moción de reconsideración debe exponer con **suficiente particularidad y especificidad** los hechos y el derecho que la parte promovente estima que deben reconsiderarse y fundarse en cuestiones sustanciales relacionadas con las determinaciones de hechos pertinentes o conclusiones de derecho materiales. *Rivera Marcucci et al. v. Suiza Dairy*, 196 DPR 157, 166-167 (2016). 32 LPRA Ap. V, R. 47.

Según lo dispone la misma regla, es importante señalar que cuando una moción de reconsideración no cumple con las especificidades de la disposición estatutaria aludida, los términos para recurrir **no quedan interrumpidos**. *Marrero Rodríguez v. Colón Burgos*, 201 DPR 330, 341 (2018); 32 LPRA Ap. V, R. 47. Con relación a esto último, para acudir en revisión ante el Tribunal de Apelaciones, el Tribunal Supremo de Puerto Rico ha expresado que las Reglas de Procedimiento Civil establecen la **suspensión**

*automática de los mismos con la presentación oportuna y que cumpla con los requisitos de la Regla 47 de Procedimiento Civil*, supra. *Marrero Rodríguez v. Colón Burgos,* supra, pág. 338; *Morales y otros v. The Sheraton Corp*, supra, págs. 7-9; J.A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 1ra ed. rev., 2012, pág. 292. *Cuando una moción de reconsideración es presentada conforme a derecho, los términos para apelar a un tribunal de mayor jerarquía quedan interrumpidos*, hasta tanto el Tribunal de Primera Instancia archive en autos copia de la notificación de la resolución resolviendo la moción de reconsideración. *Marrero Rodríguez v. Colón Burgos,* supra, pág. 338; *Mun. Rincón v. Velázquez Muñíz,* supra, pág. 1,000; *Morales y otros v. The Sheraton Corp*, supra, pág. 8.; *Plan Salud Unión v. Seaboard Sur Co.,* 182 DPR 714, 719 (2011); Véase como discusión ilustrativa de la evolución jurisprudencial sobre este asunto en *Caro v. Cardona,* 158 DPR 592, 600-603 (2003).

Ahora bien, es de gran importancia entender el razonamiento legislativo detrás del *requisito de especificidad*. El mismo fue integrado a la regla en cuestión en el año 2009. Surge del Informe de las Reglas de Procedimiento Civil, hecho por el Comité Asesor Permanente de las Reglas de Procedimiento Civil, en adelante, Informe del Comité Asesor, que esta enmienda busca *evitar mociones frívolas que tienen el propósito o efecto de dilatar innecesariamente las ejecuciones de dictámenes judiciales.* Además, el requisito aludido tiene el efecto de poner en mejor posición al foro judicial para *evaluar si los términos para recurrir quedan o no interrumpidos con las mociones de reconsideración*. Informe del Comité Asesor, supra, Secretariado de la Conferencia Judicial y Notarial, 2008, págs. 523, 551-552.

Lo cierto es que, de acuerdo con el requisito de particularidad de la Regla 47 de Procedimiento Civil, supra, una moción de

reconsideración no puede ser utilizada como subterfugio para argumentar hechos que debieron o pudieron ser presentados, especialmente si no hay justa causa para no haberlo hecho anteriormente, o para dilatar los procedimientos. *Insular Highway v. A.I.I. Co.*, 174 DPR 793, 809 (2008); *Rivera Marcucci et al. v. Suiza Dairy,* supra, págs. 166-167; *Reyes Díaz v. E.L.A. et al,* 155 DPR 799, 806 (2001); *Vega v. Emp. Tito Castro, Inc.,* 152 DPR 79, 87-88 (2000); *Lagares v. E.L.A.*, supra, pág. 612; *Olmeda Nazario v. Sueiro Jiménez,* 123 DPR 294, 299 (1989). J. Cuevas Segarra, *Tratado de Derecho Procesal Civil: Suplemento Acumulativo 2001-2005*, Tomo IV, pág. 258 (Editorial JTS, 2005). José Cuevas Segarra, *Tratado de Derecho Procesal Civil*, Tomo IV, pág. 1374 (Editorial JTS, 2011).

Si la especificidad es un requisito para la eficacia de una reconsideración, y resulta, además, insuficiente para la misma traer argumentos que no fueron levantados oportunamente, es forzoso concluir que utilizar, o incluso copiar, los argumentos ya utilizados, es también improcedente. Coincidimos con las expresiones del TSPR en *Morales v. The Sharon Corp.* del 2014,[3] en donde no solo indicó que ***no*** era suficiente repetir los argumentos de mociones o escritos pasados, sino que ***hacerlo de manera ad verbatim – o copiando y pegando – agravaba la falta***. Añadió que quien así procede "***no pone al juzgador en posición de evaluar qué parte, si alguna, debe ser reconsiderada o enmendada*** para añadir determinaciones de hechos o conclusiones de derecho adicionales". *Morales v. The Sharon Corp.*, supra, pág. 26. (Énfasis nuestro).

En conclusión, compartimos el extracto de un artículo de la Revista Jurídica de Puerto Rico en el año 2015, que analizó el efecto interruptor de una moción de reconsdieración para recurrir en apelación:

---

[3] Opinión disidente por la Honorable Juez Pabón Charneco, en *Morales v. The Sharon Corp.*, supra, pág. 25-26.

[B]ajo el criterio de especificidad no debe haber lugar para compilaciones *ad verbatim* de argumentos que ya fueron esbozados y denegados anteriormente. Al contrario, cuando se hace referencia a especificidad, se espera que la parte que solicita la reconsideración de un dictamen, valga la redundancia, especifique o particularice qué parte del dictamen requiere ser reconsiderada. Para ello, el peticionario puede hacer referencia directa a las determinaciones de hecho y/o conclusiones de derecho cuya reconsideración se solicita. Como muy bien señaló la jueza asociada Pabón Charneco, cada solicitud de reconsideración debe estar fundamentada en cuestiones sustanciales de hecho o de derecho. Es decir, no basta con solicitar la reconsideración, sino que el peticionario debe arrojar luz al tribunal de por qué, basado en determinaciones de hechos o en el derecho aplicable, procede un dictamen distinto al emitido.[4]

**III.**

La parte apelante comparece ante esta Curia solicitando que decretemos nula una *"Sentencia"* emitida el 3 de marzo de 2022. En respuesta, Capital le solicitó al Foro Primario que reconsiderara su dictamen el 19 de marzo de 2022. El 14 de noviembre de 2022, el TPI-San Juan resolvió "No Ha Lugar" la solicitud de reconsideración ante sí.

Las Reglas de Procedimiento Civil, supra, disponen que el término para apelar una sentencia queda interrumpido por la presentación de una moción de reconsideración. El término interrumpido es de treinta (30) días, y de carácter jurisdiccional. El mismo comienza a decursar nuevamente una vez el Tribunal de Primera Instancia archive en autos copia de la notificación de la resolución resolviendo la moción de reconsideración.

Sin embargo, el termino para recurrir no queda irremediablemente interrumpido una vez la moción de

---

[4] Carlos Ríos Pierluisi, La Moción de Reconsideración y el Criterio Rector para Intrerrumpir el Término para Acudir en Apelación, 85 Rev. Jur. UPR. 291, 2016.

reconsideración es presentada. La Regla 47 de Procedimiento Civil, supra, tiene ciertos requisitos para que la misma sea suficiente. *De serlo, entonces queda interrumpido el término. De lo contrario, el término para recurrir no se interrumpe con la solicitud de reconsideración.* Es decir, se cuenta desde que el dictamen recurrido es notificado, **no** desde la resolución que atienda la reconsideración.

En el caso de marras, el apelante presentó una solicitud para que se dictara sentencia sumariamente. Así también lo hizo el apelado. En su solicitud de sentencia sumaria, su oposición a la solicitud de sentencia sumaria de Barreras y en su moción de reconsideración, Capital trae *los mismos argumentos,* incumpliendo así con los requisitos de la Regla 47 de Procedimiento Civil, supra, sobre particularidad. No solo trae los mismos argumentos, sino que los que plantea debieron ser levantados previamente, cuando el TPI-San Juan sostuvo el Laudo de Arbitraje. Por último, y en adición a estos dos incumplimientos, Capital incurre en el descuidado, insuficiente e improcedente acto de copiar y pegar, *ad verbatim,* argumentos y planteamientos en la moción de reconsideración al Foro Primario, que ya había presentado en escritos anteriores. Veamos.

Para ilustrar la insuficiencia de la solicitud de reconsideración de Capital, y que a su vez impidió la interrupción del término para recurrir, hacemos los siguientes señalamientos.

Tanto la introducción de la *"Moción de Sentencia Sumaria"* y la *"Reconsideración"* de la apelante comienzan de la exacta siguiente manera:

> La génesis de la controversia ante la atención de este Honorable Tribunal, emana de un contrato de arrendamiento de suelo pactado en el año 1960 (en adelante, el Contrato de Arrendamiento de 1960). Para el periodo de tiempo relevante a esta acción, las coGabless Barreras, Inc. (Barreras) y

Gables Towers, Inc. (Gables) eran respectivamente, el arrendador y el arrendatario bajo tal contrato.[5]

Con relación a la Regla 21 de Procedimiento Civil, supra, y la jurisprudencia interpretativa, Capital reproduce *ad verbatim* dos párrafos, tanto en el acápite III(B) de su *"Oposición a Sentencia Sumaria de Barreras Inc."* y la parte II de su *"Reconsideración".[6]*

En la parte VI sobre derecho aplicable de la *"Moción de Sentencia Sumaria"* de Capital, la parte III de la *"Reconsideración"*, intitulada "Exposición y Argumentación", la parte III de la *"Oposición a Moción de Sentencia Sumaria de Barreras, Inc."* llamada "Exposición y Argumentación con respecto a la Sentencia Sumaria de Barreras", la apelante hace la misma exposición del derecho y expone la misma argumentación.[7] Sus planteamientos, fundamentados en la misma interpretación del derecho, recogen las controversias del Laudo de Arbitraje, Capital como parte indispensable en los procesos entre Gables y Barreras, la nulidad de la sentencia y orden del Tribunal de Primera Instancia que facultó a Barreras para solicitar la eliminación de las hipotecas a favor de Capital, violaciones al debido proceso de ley, el mecanismo de nulidad de sentencia, entre otros.

Algunas porciones de los argumentos fueron escritos, desarrollados y argumentados en el mismo orden y con identidad de palabras. Por lo extenso de ambas discusiones, no reproduciremos estos ejemplos de manera específica.

Tan es así, que en su *"Resolución"* resolviendo la solicitud de reconsideración, el TPI-San Juan se fundamenta exclusivamente en la insuficiencia de la moción para denegar.[8] En lo pertinente, reza el referido dictamen de la siguiente manera:

---

[5] Apéndice del recurso, págs. 468 y 1427.
[6] Id. pág. 1138-1139 y 1428.
[7] Apéndice del recurso, págs. 486-502; 1136-1143 y 1429-1443.
[8] Id. pág. 1551.

> ***Los planteamientos presentados por WM Capital son idénticos a los argumentos que utilizó en la Moción de Sentencia Sumaria y en la Oposición a Moción de Sentencia Sumaria de Barreras Inc.,*** presentadas el 10 de abril de 2020 y 15 de septiembre de 2020 respectivamente. Como se reseño en el tracto procesal, ***se trata de la misma teoría*** que WM Capital anteriormente centró su anterior solicitud de sentencia sumaria.
>
> Así pues, ***los argumentos que WM Capital presentó en su Reconsideración ya fueron considerados y discutidos***. Por tanto, resulta obligado concluir que WM Capital ***no presentó argumentos jurídicos novedosos que persuadan a este foro a reconsiderar*** el análisis, conclusión y dictamen que se dictó.[9]

(Énfasis nuestro).

El término para recurrir en apelación de la *"Sentencia"* emitida por el TPI-San Juan el 3 de marzo de 2020, comenzó a cursar el 4 de marzo de 2020, cuando fue notificada. Sin embargo, dentro del término de quince (15) días para solicitar reconsideración e interrumpir el termino de apelar, la apelante presentó una moción a tales efectos el 19 de marzo de 2020 al Foro Primario.

Por haber sido insuficiente la moción de reconsideración presentada por Capital, el término para recurrir no quedó interrumpido por su presentación. Es decir, el término para recurrir en apelación ante el Tribunal de Apelaciones comenzó a correr el 4 de marzo de 2020, venciéndose el mencionado término jurisdiccional el 3 de abril de 2020.

La apelante presentó su recurso de *"Apelación"* el 16 de diciembre de 2022, vencido hacía más de dos años el término jurisdiccional de treinta (30) días para hacerlo.

**IV.**

Por los fundamentos que anteceden, *desestimamos por falta de jurisdicción el recurso de epígrafe, por tardío.*

---

[9] Apéndice del recurso, pág. 1554.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del

Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones