ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| JOSÉ FELICIANO BABIBLONIA<br><br>Apelante<br><br>v.<br><br>ANDREA DE CASTRO FERNÁNDEZ<br><br>Apelada | KLAN202300663 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Caso Núm.:<br>A CU2018-0082<br><br>Sobre:  Custodia |

Panel integrado por su presidente, el juez Rodríguez Casillas, el juez Salgado Schwarz y el juez Ronda Del Toro.

Rodríguez Casillas, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de diciembre de 2023.

El señor José Feliciano Babilonia (apelante o señor Feliciano Babilonia) comparece para que revisemos la Resolución emitida el 7 de junio de 2023 por el Tribunal de Primer Instancia, Sala Superior de Aguadilla (TPI), [1] que acogió las recomendaciones de la Trabajadora Social de la Unidad Social de Relaciones de Familia (Unidad Social), y ordenó que las relaciones maternofiliales se lleven a cabo una semana al mes en Puerto Rico, comenzando en junio de 2023.

Por los fundamentos que discutiremos a continuación, **modificamos** la *Resolución* y así modificada, confirmamos.

**-I-**

Tenemos ante nuestra consideración un caso de relaciones de familia que se ha distinguido por ser uno altamente contencioso entre las partes. De manera que, no limitaremos a presentar los hechos procesales del caso relacionados a esta controversia, sin

---

[1] Notificada el 8 de junio de 2023.

especificar ciertos trámites cuya omisión no incide en nuestra determinación.

Según surge del expediente, el señor Feliciano Babilonia y la señora Andrea De Castro Fernández (apelada o señora De Castro Fernández) son los progenitores de un niño menor de edad, JEFDC. En el año 2018, el señor Feliciano Babilonia y la señora De Castro Fernández fueron referidos a la Unidad Social. A raíz de este referido, las partes alcanzaron un acuerdo a través de sus representantes legales sobre la custodia del menor otorgándole al apelante la custodia legal de JEFDC. Desde entonces, los padres del menor JEFDC han acudido a los tribunales en diversas ocasiones disputándose las condiciones que atañan las relaciones maternofiliales.

En el año 2022, el TPI asignó a la Trabajadora Social Johanna Ramos Feliciano (Trabajadora Social o señora Ramos Feliciano) de la Oficina de Relaciones de Familia para que llevara a cabo un Informe Social Forense Sobre Custodia (Informe).[2] En el referido Informe, la Trabajadora Social debía realizar un estudio de custodia monoparental, entrevista al menor y proveerle al tribunal recomendaciones provisionales sobre custodia. El foro *a quo* señaló vista para el 18 de mayo de 2022 para discutir los hallazgos de la Trabajadora Social.

El Informe detalló las múltiples incidencias entre las partes a través de los años. En síntesis, la señora Ramos Feliciano indicó que el menor JEFDC expresó estar a gusto con ambos progenitores. Sin embargo, notó en el menor JEFDC confusión provocada por ambos progenitores que lo colocaba en un conflicto de lealtad. Además, señaló la señora Ramos Feliciano que la comunicación entre los progenitores era deficiente, por lo que no lograban ponerse de

---

[2] Véase, Apéndice del Apelante, págs. 48-81.

acuerdo en la división de deberes y responsabilidades. Esto, según el Informe, era un indicador de que las partes pudieran estar incurriendo en alienación parental. En base a estos hallazgos, la Trabajadora Social hizo las siguientes recomendaciones provisionales:

1. **Que el menor continúe bajo la custodia de papá provisionalmente.**

2. **Que las relaciones maternofiliales se cumplan fines de semanas alternas de viernes de 6:00p.m. a domingo a la 6:00p.m. La entrega y el recogido del menor sea según las partes habían establecido previamente.**

3. Que se les ordene a las partes ser evaluados por la Dra. Frances Soto Gay Psicóloga para evaluar las capacidades protectoras y estado mental de estos.

4. Que se les ordene a las partes a ser evaluados a través de una consejera en adicción de sustancias controlada y alcohol para descartar o validar el uso de estas sustancias. Que se les ordene a las partes hacerse una prueba de cabello. En un periodo no más de 24 horas de haber recibido la orden.

5. **Que se les ordene a las partes asistir al Instituto de Rita Córdova, para que trabajen un proceso de Coordinación de Parentalidad. Dicha agencia se especializa en familia de alto nivel de conflicto y proteger y mantener las relaciones filiales seguras, sanas y significativa.**

6. Que bajo ningún concepto se le provea al niño información relacionada sobre las partes y asuntos que se dilucidan en el Tribunal. De continuar dándose dicha práctica se procederá hacer un escrito al Tribunal sobre la suspensión de las relaciones maternofiliales o remoción de custodia.

7. Que se le permita al menor compartir con mamá en verano por espacio de dos semanas.

8. **Que la comunicación por video llamada entre madre e hijo sea en la terraza del patio no en el closet. Que las llamadas pueden realizarse en un periodo 4:00pm a 6:00pm**

9. Que el señor Feliciano complete el plan de servicios del Departamento de la Familia en Aguada.

10. Que en un periodo de seis meses se nos permita reevaluar el caso para hacer recomendaciones finales y ver si las partes cumplieron con las recomendaciones, conocer los

resultados de las evaluaciones y tratamiento a las partes y menor.[3]

El 18 de julio de 2022 el TPI emitió una *Resolución* mediante la cual aceptó las recomendaciones provisionales.[4] Posteriormente, la señora De Castro Fernández se mudó fuera de la jurisdicción de Puerto Rico para residir en el Estado de la Florida. Las relaciones maternofiliales continuaron dándose en fines de semanas alternos.

Por otro lado, y en cumplimiento con la *Resolución* del 18 de julio de 2022, el menor JEFDC y sus progenitores acudieron al Instituto de Rita Córdova para recibir terapia. Para ello, se les asignó la Dra. Hazel Faunde (Dra. Faunde). Estando en terapia con la Dra. Faunde, las partes acordaron que las relaciones maternofiliales se llevarían a cabo una semana al mes en lugar de fines de semanas alternos. Esto, en consideración a lo difícil y oneroso que resultaba para la señora De Castro Fernández viajar para visitar al menor JEFDC durante los fines de semana.

No obstante, el señor Feliciano Babilonia se retractó y el 30 de agosto de 2022 presentó una *Moción Informativa*.[5] Adujo que la referida propuesta incidía y alteraba las ordenes emitidas por el tribunal. En particular, la mayor preocupación del señor Feliciano Babilonia era que la escuela del menor JEFDC se encontraba en Moca y para sus visitas, la señora De Castro Fernández pernoctaría con familiares y amigos en Ponce o San Juan. Argumentó además que del informe de la Trabajadora Social se desprendía que la apelada no estudiaba con el menor; que la señora De Castro Fernández manipulaba al menor JEFDC, que la propuesta no contemplaba la estabilidad emocional ni psicológica del menor JEFDC y que tampoco contemplaba qué sucedería si la apelada no

---

[3] Véase, Apéndice del Apelante, págs. 80-81.
[4] Véase, Apéndice del Apelante, págs. 39-40.
[5] Véase, Apéndice de la Apelada, págs. 16-19.

cumplía con notificar con un mes de anticipación en cuál semana estaría de visita.

Ante este cuadro y luego de varios trámites procesales, el 11 de mayo de 2023 el TPI celebró una vista argumentativa para discutir varios asuntos pendientes. Entre estos, la recomendación de la Dra. Faunde. A la vista, que se realizó por la plataforma virtual *Zoom*, compareció el señor Feliciano Babilonia junto a su representante legal la Lcda. Mariel Torres Feliciano. De igual forma, compareció la señora De Castro Fernández junto a su representante legal, la Lcda. Blanca Sáez Ortiz. En la vista, las representantes legales de ambas partes argumentaron extensamente sobre los asuntos pendientes, en particular sobre la recomendación de la Dra. Faunde. En lo pertinente, explicó el TPI que *al no tener un informe de la Dra. Faunde al respecto, remitiría la propuesta a la Unidad Social para que evaluara la propuesta puesto que consideraba que era una posibilidad viable*. Por ello, mantuvo las relaciones maternofiliales de los fines de semana. En torno a este particular, se suscitó el siguiente intercambio:

> LCDA. BLANCA SAEZ ORTIZ
> Nosotros queremos saber basado en qué no se le puede dar una semana a mamá, si se le dan tres días.
>
> JUEZ
> Licenciada, **basado en que ya el Tribunal determinó sobre eso** y que **dimos una Orden de que se va a evaluar de que eso sea una relación permanente, pero vamos a dar tiempo**, porque como usted dice, **"lo recomienda la doctora Faunde"**. Yo no tengo informe de la doctora Faunde aquí.
>
> LCDA. BLANCA SAEZ ORTIZ
> Pero está en, está esta, con el de la Trabajadora Social.
>
> JUEZ
> **Sí está en la recomendación**, correcto, **pero se va a establecer para que se evalúe de manera final**. Eso fue una recomendación provisional, no se ha llevado a cabo. Usted puede estar o no de acuerdo licenciada, ese es su derecho, pero el Tribunal es quien decide. **Así que se va a hacer el referido para que sea esa evaluación final.** Nosotros entendemos que no debe haber ningún problema, sí, tiene que un compromiso en este caso de mamá viajar a Puerto Rico una vez al mes por una semana. O sea, que...
>
> LCDA. BLANCA SAEZ ORTIZ
> Lo hizo Jueza.

JUEZ
Aquí la, están todos, okey.

LCDA. BLANCA SAEZ ORTIZ
Ella lo hizo y perdió todo el dinero porque papá no se lo entregó.

JUEZ
Okey.

LCDA. MARIEL TORRES FELICIANO
Jue, pero estábamos...

JUEZ
**Eso se va a evaluar cuando el Tribunal reciba el informe de la doctora Faunde con las recomendaciones,** porque le vamos a emitir ese informe, **vamos a pedirle a la Unidad Social que evalúe y se reúna con la doctora Faunde, para discutir esas posibilidades y esas recomendaciones y tengamos un panorama más claro**; se va a tomar una determinación sobre eso.

Si mamá está conforme y de acuerdo en que va a viajar una semana al mes a Puerto Rico y así se recomienda por los profesionales, **el Tribunal no va a tener ningún inconveniente en aprobarlo**, siempre que el menor no se afecte en sus estudios y en, en, verdad, en su progreso académico, pero lo vamos a hacer ordenadamente no porque yo quiera o porque aquel quiera o porque aquel lo recomiende, porque aquí me dice "lo recomendó la doctora Faunde", **pero yo no tengo aquí ningún documento en este expediente de la doctora Faunde diciéndome cuáles son sus recomendaciones, no lo tengo.** Y por eso al principio pedí que se me informe. Cuando se reciba la información el Tribunal va a determinar.

LCDA. MARIEL TORRES FELICIANO
**Si nos permite una sugerencia en cuanto a la entrega y recogido, lo hemos conversado con el compañero, verdad, nos pusimos en "mute" eh, un momento eh, lo hemos eh, dialogado con el caballero, eh a los fines de facilitar verdad, también la situación**, anteriormente se hacía uno entregaba y otro recogía. **El caballero estaría en disposición de llegar a ese acuerdo o verdad,** o al punto medio, **pero nos parece que quizás lo más, eh, sano y, sería que cada uno se encargara uno de la entrega y otro del recogido, que la dama lo, buscara al menor, verdad y usted lo recoge**.

JUEZ
¿Hay algún problema con eso o hay que establecer un punto medio, licenciada Sáez?

LCDA. BLANCA SAEZ ORTIZ
Ningún problema con eso.[6]

La Vista Argumentativa culminó con la siguiente recapitulación:

JUEZ
Con relación a la alienación parental se va a emitir una Orden para referir a la Unidad Social, que se haga una evaluación sobre eso y se evalúe si en efecto se pueden validar las alegaciones o no.

---

[6] Véase, Transcripción de Vista Argumentativa, págs. 54-56.

Eh, sobre las llamadas telefónicas, ya el Tribunal determinó que se van a continuar las relaciones mediante llamadas telefónicas, hay unos días y unas horas, pero que en caso de que mamá tenga problemas para coordinar una hora se flexibilice para que padres puedan coordinar a hora distinta, donde mamá pueda comunicarse con el menor.

Eh, **con relación a los fines de semana, mamá cuando vaya a venir va a coordinar.** Ya se estableció que se va a establecer un, **mamá va a ir a recoger al menor al lugar donde él vive y papá lo va a ir a recoger en donde mamá esté hospedándose, también lo tienen que coordinar las partes.**

Eh, y las vacaciones nos queda pendiente que en cinco días las partes se comuniquen; ya se ha establecido como se van a dar si es que se da ese proceso. Cabe informar, cual ha sido el resultado de sus gestiones, le vamos a dar cinco días para ello.[7]

Así las cosas, el 7 de junio de 2023, el TPI emitió una *Resolución* sobre la vista argumentativa del 11 de mayo de 2023, y resolvió lo siguiente:

1. Se declara No Ha Lugar el viaje del menor fuera de Puerto Rico en verano de 2023.

2. **El tribunal acoge las recomendaciones de la TS Johanna Ramos de la Unidad Social de Relaciones de Familia, y ordena las relaciones maternofiliales una semana al mes en Puerto Rico, comenzando en el mes de junio de 2023.**

3. **Mamá informará a papá la fecha específica del viaje mensual y el lugar donde se estará hospedando, con una semana de anticipación.**

4. Conforme lo solicitó la Sra. De Castro, y por acuerdo entre las partes, mamá recogerá al menor el viernes del fin de semana que viaje a Puerto Rico en el hogar de papá y papá buscará al menor el domingo en San Juan o en el lugar donde se estén hospedando mamá y el menor.

5. El tribunal evaluará el desarrollo de las relaciones maternofiliales durante los próximos meses y evaluará la posibilidad de que el menor pueda viajar fuera de Puerto Rico con mamá en una fecha futura.[8]

Inconforme, el apelante presentó un escrito intitulado *Reconsideración y/o Solicitando Enmienda Nunc Pro Tunc.*[9] En síntesis, esbozó que en la vista argumentativa del 11 de mayo de

---

[7] Véase, Transcripción de Vista Argumentativa, pág. 75.
[8] Véase, Apéndice del Apelante, pág. 14.
[9] Véase, Apéndice del Apelante, págs. 2-11.

2023 el TPI había resuelto, *para récord,* que las relaciones maternofiliales se mantendrían durante los fines de semanas alternos según lo ordenando en julio de 2022. No obstante, ello cambió en la *Resolución* del 7 de junio de 2023 que dispuso que las relaciones maternofiliales serán una semana al mes; reiteró, que eso era contrario a lo establecido anteriormente.[10] Así, solicitó al foro primario que reconsiderara su determinación. Además, solicitó que el foro *a quo* reconsiderara la entrega y recogido del menor JEFDC para que fuese el apelante el encargado de la entrega del menor en el hospedaje de la apelada y, en consecuencia, que fuese la apelada la encargada de devolver al menor JEFDC.[11]

El 28 de junio de 2023 el TPI declaró *No Ha Lugar* la moción de reconsideración del apelante debido a que *"los asuntos planteados fueron ampliamente discutidos y resueltos en la vista de 11 de mayo de 2023".*[12]

Inconforme, el 31 de julio de 2023 el señor Feliciano Babilonia acudió ante nos mediante el recurso de apelación.[13] Solicita la revocación de la *Resolución* del 7 de junio de 2023 y planteó la comisión de los siguientes errores:

> **ERRÓ EL HONORABLE TRIBUNAL AL EMITIR UNA RESOLUCIÓN CONTRARIA A LA DETERMINACIÓN TOMADA EN LA VISTA CELEBRADA EL 11 DE MAYO DE 2023, SIN EVIDENCIA QUE APOYE SU DETERMINACIÓN.**
>
> **ERRÓ EL HONORABLE TRIBUNAL AL EMITIR UNA DETERMINACIÓN QUE NO SE SOSTIENE EN EL RÉCORD.**
>
> **ERRÓ EL HONORABLE TRIBUNAL AL ACOGER UNA RECOMENDACIÓN DE LA TRABAJADORA SOCIAL QUE NO SE SUSTENTA EN UN ESTUDIO SOCIAL O EVALUACIÓN.**
>
> **ERRÓ EL HONORABLE TRIBUNAL AL ACOGER UNA RECOMENDACIÓN QUE NO TOMÓ EN CONSIDERACIÓN NI EVALUÓ EL MEJOR BIENESTAR DEL MENOR.**

---

[10] *Id.*
[11] *Id.*
[12] Véase, Apéndice del Apelante, pág. 1.
[13] El 25 de septiembre de 2023, el apelante sometió por orden de este foro un Alegato Suplementario con el fin de que hiciera referencia a las porciones de la transcripción de la vista argumentativa que fueran relevantes a sus señalamientos de error.

**ERRÓ EL HONORABLE TRIBUNAL AL PRIVAR A LA PARTE DEL DERECHO A EVALUAR EL INFORME SOCIAL Y PRESENTAR POSICIÓN EN CUANTO UNA RECOMENDACIÓN REALIZADA POR LA UNIDAD SOCIAL, INLCUYENDO EL DERECHO A IMPUGNAR.**

**ERRÓ EL HONORABLE TRIBUNAL AL NO ACEPTAR QUE EL APELANTE PUDIERA RECONSIDERAR SU OFERTA DE RECOGIDO DEL MENOR; Y EN SU LUGAR, PROCEDER CON LA ENTREGA DEL MENOR.**

El 1 de noviembre de 2023 compareció la señora De Castro Fernández mediante oposición y nos solicitó que declaremos *No Ha Lugar* el recurso del apelante y, por consiguiente, que confirmemos la *Resolución* apelada. Examinados los escritos de ambas partes, nos encontramos en posición de resolver.

**-II-**

En aquellos casos donde se dispute la custodia de un menor, los tribunales tienen la responsabilidad de evaluar y determinar la custodia conforme a las disposiciones de la Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia, Ley Núm. 223 de 21 de noviembre de 2011, según enmendada (Ley 223-2011). Esta ley tiene como eje central garantizar la sana convivencia familiar y, por supuesto, el mejor bienestar de los menores.[14] La recomendación sobre custodia del trabajador social, así como la determinación sobre custodia del Tribunal tienen como propósito garantizar el mejor bienestar del menor.[15]

Cuando exista controversia entre los progenitores en torno a la custodia de un menor, el tribunal referirá el caso a un trabajador social de Relaciones de Familia.[16] Este último estará encargado de realizar una evaluación y rendir un informe con recomendaciones al Tribunal.[17] El trabajador social al hacer su evaluación y el tribunal, por su parte, al emitir su determinación deben considerar los siguientes criterios:

---

[14] Véase, Exposición de Motivos.
[15] 32 LPRA sec. 3186.
[16] 32 LPRA sec. 3185.
[17] *Id.*

1. La salud mental de ambos progenitores, así como la del hijo(a) o hijos(as) cuya custodia se va a adjudicar.

2. El nivel de responsabilidad o integridad moral exhibido por cada uno de los progenitores y si ha habido un historial de violencia doméstica entre los integrantes del núcleo familiar.

3. La capacidad de cada progenitor para satisfacer las necesidades afectivas, económicas y morales del menor, tanto presentes como futuras.

4. El historial de cada progenitor en la relación con sus hijos, tanto antes del divorcio, separación o disolución de la relación consensual, como después del mismo.

5. Las necesidades específicas de cada uno de los menores cuya custodia está en controversia.

6. La interrelación de cada menor, con sus progenitores, sus hermanos y demás miembros de la familia.

7. Que la decisión no sea producto de la irreflexión o coacción.

8. Si los progenitores poseen la capacidad, disponibilidad y firme propósito de asumir la responsabilidad de criar los hijos conjuntamente.

9. Los verdaderos motivos y objetivos por los cuales los progenitores han solicitado la patria potestad y custodia compartida.

10. Si la profesión, ocupación u oficio que realizan los progenitores impedirá que funcione el acuerdo efectivamente.

11. Si la ubicación y distancia de ambos hogares perjudica la educación del menor.

12. La comunicación que existe entre los progenitores y la capacidad para comunicarse mediante comunicación directa o utilizando mecanismos alternos.

13. Analizará la presencia de la enajenación parental, o cualesquiera otras razones que pudieran ocasionar la resistencia del menor para relacionarse con sus padres.[18]

Esta evaluación que realizan los trabajadores sociales se denomina *evaluación social forense*. El Manual de Normas y Procedimientos de la Unidades Sociales de Relaciones de Familia y

---

[18] *Id.*

Asuntos de Menores de agosto de 2013 (Manual), [19] define la evaluación social forense como el:

> *Proceso de análisis en el cual se sigue un protocolo uniforme para que el (la) Trabajador(a) Social adiestrado(a) en casos de familia y asuntos de menores **pueda brindar asesoramiento al (a la) juez(a)**. Refleja en forma objetiva y científica la personalidad del individuo y el entorno familiar.*[20]

Finalizada la evaluación social forense, el trabajador social debe emitir un *informe social forense*. El informe social forense es el *"producto final del proceso de evaluación donde se destacan todas las áreas evaluadas, las fuentes de datos, e integra el conocimiento teórico o razonamiento que fundamente las recomendaciones"*.[21]

Estas recomendaciones sobre custodias emitidas por los trabajadores sociales es uno de los factores a considerar por el Tribunal para hacer una determinación.[22] Sin embargo, no es el único factor. Esto se debe a que la Ley 223-2011 expresamente dispone en su Artículo 8 que *"el Tribunal siempre tendrá discreción judicial para la determinación y adjudicación de custodia, protegiendo los mejores intereses y el bienestar de los menores a la luz de todas las circunstancias existentes"*.[23]

**B.**

Es doctrina reiterada por nuestra jurisprudencia que las sentencias dictadas por los tribunales de instancia merecen deferencia, toda vez que el juzgador de los hechos en dicha etapa aquilata la prueba de primera mano y se encuentra en una mejor posición que los foros apelativos para evaluar la misma.[24] Como la corrección de los tribunales inferiores se presume, los tribunales apelativos solo debemos variar dichos dictámenes si en su determinación, el foro apelado incurrió en *error manifiesto*, *pasión*,

---

[19] Por virtud de la Carta Circular Núm. 6 de 6 de agosto de 2013, se aprobaron las normas y procedimientos del Manual

[20] Manual de Normas y Procedimientos de las Unidades Sociales de Relaciones de Familia y Asuntos de Menores, Agosto 2013, Parte VII (N), pág. 8.

[21] Manual de Normas, *Id.*, Parte VII (R), pág. 9.

[22] 32 LPRA sec. 3186.

[23] *Id.*

[24] *Gallardo v. Petiton*, 132 DPR 39, 56 (1992).

*prejuicio* o *parcialidad.*[25] Reiteramos, el tribunal de instancia es quien está en mejor posición de aquilatar la prueba testifical.

Por ello, reconocemos la norma de abstención de alterar las determinaciones del tribunal de primera instancia en asuntos de derecho de familia concediéndole amplia discreción.[26] Sin embargo, esta norma de deferencia tiene una excepción y cede cuando la parte promovente demuestra que:

> *[h]ubo un craso abuso de discreción o que el tribunal actuó con prejuicio y parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial.*[27]

El Tribunal Supremo de Puerto Rico reconocen la difícil tarea que es la evaluación de abuso de discreción por parte de los tribunales.[28] No obstante, el foro supremo reconoce que la estrecha e indudable relación entre el adecuado ejercicio de discreción y el concepto de razonabilidad.[29] Nuestro más alto foro ha definido la *discreción* como "*una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera*".[30] Cónsono con ello, el Tribunal Supremo enumeró situaciones que constituyen un abuso de discreción:

> *[c]uando el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos.*[31]

Ahora bien, la norma de deferencia no es de aplicación a la evaluación de la prueba pericial y documental. Los foros revisores nos encontramos en igual posición que los tribunales

---

[25] *Hernández Maldonado v. Taco Maker*, 181 DPR 281, 289 (2011).
[26] *Ortiz v. Vega*, 107 DPR 831, 832 (1978).
[27] *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012).
[28] *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414, 435 (2013).
[29] *Id.*
[30] *Id.*
[31] *Ramírez v. Policía de PR*, 158 DPR 320, 340-341 (2002).

sentenciadores, en lo que respecta a las conclusiones de hechos basadas en prueba pericial o documental, para apreciarla y adoptar nuestro propio criterio. [32] Inclusive, aunque sea técnicamente correcta, podemos descartarla.[33]

**-III-**

Debido a que el señor Feliciano Babilonia plantea la comisión de errores similares, los mismos serán discutidos en conjunto. En esencia, en sus primeros cinco errores, alega que el TPI incidió al tomar una determinación que no se sostiene con el récord, sin evidencia y contraria a la anunciada durante la vista argumentativa del 11 de mayo de 2023; al acoger y aprobar el Informe Social presentado por la Trabajadora Social; al no permitirle al apelante evaluar el Informe Social; y al no considerar el mejor bienestar del menor. Arguye, que tomar una determinación sobre las relaciones maternofiliales incide en el mejor bienestar del menor JEFDC al no contar con un informe social forense al respecto. Le asiste la razón.

Surge de la transcripción de la Vista Argumentativa del 11 de mayo de 2023 que el tribunal no contaba con un Informe Social Forense donde se discutiera la posibilidad de enmendar la forma en la que se llevaban las relaciones maternofiliales. De manera que, el foro recurrido le solicitó a la Unidad Social que realizará un informe con el fin de evaluar si era viable que las relaciones maternofiliales se pudiesen llevar a cabo una semana al mes. Recordemos lo que señaló el TPI el 11 de mayo de 2023:

> JUEZ
> *Eso se va a evaluar cuando el Tribunal reciba el informe de la doctora Faunde con las recomendaciones,* porque le vamos a emitir ese informe, *vamos a pedirle a la Unidad Social que evalúe y se reúna con la doctora Faunde, para discutir esas posibilidades y esas recomendaciones y tengamos un panorama más claro*; se va a tomar una determinación sobre eso.

---

[32] *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011); *Arrieta v. De La Vega*, 165 DPR 538, 551 (2005).
[33] *Id.*

> *Si mamá está conforme y de acuerdo en que va a viajar una semana al mes a Puerto Rico y así se recomienda por los profesionales, el Tribunal no va a tener ningún inconveniente en aprobarlo*, siempre que el menor no se afecte en sus estudios y en, en, verdad, en su progreso académico, pero lo vamos a hacer ordenadamente no porque yo quiera o porque aquel quiera o porque aquel lo recomiende, porque aquí me dice "lo recomendó la doctora Faunde", *pero yo no tengo aquí ningún documento en este expediente de la doctora Faunde diciéndome cuáles son sus recomendaciones, no lo tengo.* Y por eso al principio pedí que se me informe. Cuando se reciba la información el Tribunal va a determinar.[34]

El Informe Social Forense es el producto final que detalla todas las áreas evaluadas por los trabajadores sociales. Es un documento con un alto valor para el tribunal puesto que contiene los hallazgos y recomendaciones de expertos y peritos en las relaciones de familia. Si bien es cierto que el Informe Social Forense no es el único factor que los tribunales toman en consideración, esto no significa que los tribunales pueden obviar por completo el contenido de los informes.

Como bien señalamos, en el proceso decisional en torno a la custodia de un menor se requiere la evaluación de varios criterios sociales que inciden en el mejor interés de menor. Es harto conocido que las partes afectadas por un Informe Social Forense tienen derecho a examinarlo y el tribunal de instancia *está en la obligación de proveer una oportunidad para que las partes afectadas puedan formular objeciones al mismo o presentar prueba en contra de las conclusiones de dicho informe*.[35]

En el caso de marras, el TPI tomó una determinación basada en un "Informe Social Forense" al que las partes no han podido examinar porque, parecería ser, que el "informe en cuestión" no existe. El único informe que obra en el expediente ante nuestra consideración es el Informe de 3 de junio de 2022. En ese informe se recomendó de manera provisional que <u>las relaciones</u>

---

[34] Véase, Transcripción de Vista Argumentativa, págs. 55-56.
[35] *Rentas Nieves v. Betancourt Figueroa*, 201 DPR 416, 422 (2018).

*maternofiliales se llevaran a cabo en fines de semanas alternos*. Ahora bien, el informe que el TPI le solicitó a la Unidad Social debía evaluar la *posibilidad* de que las relaciones maternofiliales se llevaran a cabo una semana al mes. De la propia transcripción de la vista argumentativa surge que el TPI se negó a tomar una determinación sobre las relaciones maternofiliales *porque no contaba con un Informe Social Forense que atendiera el asunto. A esos fines, le solicitó a la Unidad Social que realizara un nuevo Informe Social Forense para así poder tener un panorama más claro sobre el asunto*. Así las cosas, determinó que las relaciones maternofiliales continuarían los fines de semanas alternos.

En la *Resolución* de 7 de agosto de 2023 el TPI dispone que *"el tribunal acoge las recomendaciones del TS Johanna Ramos, de la Unidad Social de Relaciones de Familia, y ordena las relaciones maternofiliales una semana al mes en Puerto Rico, comenzando el mes de junio de 2023"*.[36] Esa determinación no dispone de qué manera se llevará a cabo este nuevo arreglo. Sin el Informe Social Forense no existe un fundamento que justifique una determinación de esa naturaleza. Ciertamente, la Resolución de 7 de junio de 2023 es contraria a lo señalado por el TPI durante la vista argumentativa del 11 de mayo de 2023. Somos del criterio que el tribunal erró al tomar una determinación que no está fundamentada en el expediente.

Por último, el señor Feliciano Babilonia alega que el TPI incidió al modificar las responsabilidades de recogido del menor JEFDC. Se desprende del expediente que el tribunal determinó que la señora De Castro será responsable de recoger al menor JEFDC los viernes por la tarde en el hogar del apelante y el señor Feliciano Babilonia será responsable de recoger al menor los domingos por la tarde en

---

[36] Véase, Apéndice del Apelante, pág. 14.

el lugar donde se está hospedando la apelada. Sin embargo, el apelante arguye que la determinación del foro *a quo* es contraria a la Resolución de julio de 2022, toda vez que, siendo la señora De Castro la persona con interés en la relación maternofilial, esta debía propiciar la misma. Arguye además, que este nuevo arreglo trastoca el hogar y rutina con su hijo. Esto, debido a que los domingos son los únicos días libres del apelante y este constituyó un nuevo hogar, junto su pareja que se encuentra en estado de embarazo. Además, adujo que el menor JEFDC asiste a misa los domingos por la noche ya que, para su Primera Comunión y por estar matriculado en una escuela de la religión católica, es requisito que el menor asista a misa todos los domingos. Señaló que asistir a misa los domingos es parte de la rutina que el menor JEFDC tiene con su padre y, si el apelante tuviese que buscar al menor los domingos por la tarde, no podrían asistir a misa.

También, argumenta que el tema del recogido del menor JEFDC fue uno sorpresivo ya que no constaba en la agenda del tribunal ni se había anunciado con anterioridad a la vista, por lo que no tuvo oportunidad de discutir dicho asunto con su abogada. Arguye además, que durante la vista se encontraba indispuesto de salud e inclusive, tuvo que salir un momento durante la vista. Aunque en medio de todo esto, las partes acordaron que recogería al menor JEFDC, ello fue por error, pues en realidad lo que quería indicar era que se encargaría de la entrega del menor los viernes. No tiene razón.

El señor Feliciano Babilonia basa su señalamiento de error en que el derecho del progenitor no custodio no debe interferir irrazonablemente con el del otro padre a tener una vida privada en la tranquilidad de su hogar.[37] No vemos como buscar al menor

---

[37] Véase, Recurso de Apelación, pág. 23.

JEFDC los domingos por la tarde interfiere irrazonablemente con la vida privada del apelante. Máxime, cuando los domingos hay misa en horas de la mañana. Bien sabemos que tener hijos menores de edad conlleva un sinnúmero de sacrificios. Entre estos, cambios en las rutinas y estilos de vidas, por lo que nada impide que el apelante haga los arreglos.

En fin, ante la presencia de un error manifiesto en este caso, en cuanto a la ausencia de un Informe Forense, se revoca el dictamen sobre las relaciones maternofiliales una semana al mes sin que antes se realice la evaluación social forense y la presentación del Informe Social Forense, para que el TPI tenga ante su consideración una evaluación final, y por ende, poder determinar si procede que las relaciones maternofiliales sean una semana al mes; así modificada, confirmamos el resto de la Resolución apelada.

**-IV-**

Por las razones expuestas, revocamos la Resolución apelada a los únicos fines de que se realice el Informe Social solicitado por el TPI para evaluar la posibilidad de que las relaciones maternofiliales se lleven a cabo una semana al mes; así modificada, se confirma la misma.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones